EXHIBIT
J

Filed 10/24/2022 3:45 PM
JoAnna Gonzales
District Clerk
Howard County, Texas

**CAUSE NO. 53885**

| | | |
|---|---|---|
| **THREE GLOBAL, LLC, JESSE DICKENS, REED SHAHAN, and CHUCK DORRITY** | § | **IN THE 118th DISTRICT COURT** |
| ***Plaintiffs,*** | § | |
| **v.** | § | |
| **TDR SERVICES, INC., 365 OUTDOORS, INC., TEN 22 CONSULTING, INC, TOTAL SUPPLY & RENTAL, LLC, INDUSTRIAL OILFIELD CONSTRUCTION LLC, ROBERT E. ROLAND, JR., ROBERT E. ROLAND, III, and JASON TINSLEY** | § | **IN AND FOR** |
| ***Defendants.*** | § | **HOWARD COUNTY, TEXAS** |

**PLAINTIFFS' FIRST AMENDED PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now **THREE GLOBAL, LLC**, **JESSE DICKENS**, **REED SHAHAN**, and **CHUCK DORRITY** (collectively "Plaintiffs"), Plaintiffs in the above-styled and numbered cause, and file this, their *First Amended Petition*, complaining of **TDR SERVICES, INC., 365 OUTDOORS, INC., TEN 22 CONSULTING, INC., TOTAL SUPPLY & RENTAL, LLC, INDUSTRIAL OILFIELD CONSTRUCTION LLC, ROBERT E. ROLAND, JR.**, **ROBERT E. ROLAND, III**, and **JASON TINSLEY** (collectively "Defendants"), Defendants, and for cause of action show the Court as follows:

**I.**
**DISCOVERY**

1. Plaintiff intends to conduct Discovery under Level 3.



Copy from re:SearchTX

## II.
## PARTIES

2. Plaintiff Three Global, LLC ("Three Global" or the "Company") is a limited liability company organized under the laws of the state of Texas and having a registered address at 1400 East Highway 350, Big Spring, Texas 79720.

3. Plaintiff Jesse Dickens ("Dickens") is an individual residing in Howard County, Texas. The last three digits of his Texas driver's license number are 109 and the last three digits of his social security number are 943.

4. Plaintiff Reed Shahan ("Shahan") is an individual residing in Tom Green County, Texas. The last three digits of his Texas driver's license number are 021 and the last three digits of his social security number are 746.

5. Plaintiff Chuck Dorrity ("Dorrity") is an individual residing in Midland County, Texas. The last three digits of his Texas driver's license number are 583 and the last three digits of his social security number are 154.

6. Defendant TDR Services, Inc. ("TDR") is a corporation organized under the laws of the state of Texas that has appeared and answered herein through its counsel Joel Amos Gordon. Robert E. Roland, Jr. and Robert E. Roland, III are and were at times relevant to this matter the shareholders, directors, officers and governing persons of TDR.

7. Defendant 365 Outdoors, Inc. ("365 Outdoors") is a corporation organized under the laws of the state of Texas that has appeared and answered herein through its counsel Joel Amos Gordon. Robert E. Roland, III is and was at times relevant to this matter the only shareholder, director, officer and governing person of 365 Outdoors.

8. Defendant Ten 22 Consulting, Inc. ("Ten 22") is a corporation organized under the laws of the state of Texas that has appeared and answered herein through its counsel Joel Amos



Copy from re:SearchTX

Gordon. Robert E. Roland, III is and was at times relevant to this matter the only shareholder, director, officer and governing person of Ten 22.

9. Defendant Total Supply & Rental, LLC ("Total Supply") is a limited liability company organized under the laws of the state of Texas that has appeared and answered herein by and through its counsel Patrick H. Cordero, Jr. On information and belief and at all times relevant to this cause Jason Tinsely is and was at all times relevant to this matter an owner, member, manager and governing person of Total Supply.

10. Defendant Industrial Oilfield Construction LLC ("Industrial Oilfield") is a limited liability company organized under the laws of the state of Texas that has appeared and answered herein by and through its counsel Patrick H. Cordero, Jr. On information and belief and at all times relevant to this cause Jason Tinsely and Robert E. Roland, III are and were at all times relevant to this matter owners, members, managers and governing persons of Total Supply.

11. Defendant Robert E. Roland, Jr. ("Robert Roland") is an individual residing in Texas who has appeared and answered herein previously through counsel and now proceeds pro se pursuant to this Court's order dated October 28, 2021, and whom the court has ordered all notices be delivered in person to Robert Roland or mailed regular or certified mail to 4419 E CR 60, Midland, Texas 79705.

12. Defendant Robert E. "Trey" Roland, III ("Trey Roland") is an individual residing in Texas who has appeared and answered herein through counsel Joel Amos Gordon.

13. Defendant Jason Tinsley is an individual residing in Texas who has appeared and answered herein through counsel Patrick H. Cordero, Jr.



Copy from re:SearchTX

## III.
## VENUE AND JURISDICTION

14. Venue is proper in Howard County, Texas, under Chapter 15 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, as Howard County is the county in which all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred. Additionally, Howard County is the county of Defendant TDR's principal Texas office, and accordingly Howard County is a county of proper venue as to all other Defendants pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 15.005.

15. Jurisdiction is proper in this Court pursuant to the TEXAS GOVERNMENT CODE. Plaintiff seeks monetary relief over $1,000,000.00. The damages sought are within the jurisdictional limits of this Court.

## IV.
## BACKGROUND FACTS

16. This case arises from the concerted action of Robert Roland, Trey Roland, and Jason Tinsley to systematically loot the assets of Three Global through theft, fraud, deceit, and breaches of various duties in order to enrich themselves and their entities, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply, which—upon information and belief—are each and all jointly owned and operated by one or more of the individual Defendants and utilized jointly by all Defendants as part of a unified and connected series of business ventures.

17. Plaintiff Three Global was formed on May 2, 2008 by filing a Certificate of Formation with the Secretary of the State of Texas. In approximately 2013—desiring to branch out into a new field in the oil and gas industry because their roustabout business, TDR, was floundering—Robert Roland and Trey Roland induced Dickens, Shahan, and Dorrity to join the Company in exchange for capital contributions and/or the provision of sweat equity.



Copy from re:SearchTX

18. Robert Roland and Trey Roland represented that the purpose of the company would be to provide water-related oilfield services such as poly-piping, pit-lining, and pump and generator rentals, and that the Three Global water business would enjoy a synergistic relationship with TDR's existing roustabout business. Ultimately, Dickens, Shahan, and Dorrity affiliated with Three Global in mid-2013, with Dickens providing extensive knowledge and industry connections for water-related sales and services, Dorrity providing valuable financial connections, and Shahan providing approximately $640,000 in capital funding.

19. Since June 19, 2013, Robert Roland, Trey Roland, Dickens, Shahan, and Dorrity have been the only members of Three Global, and the company is owned as follows:

| Name | Membership Interest Percentage |
|---|---|
| Robert E. Roland, Jr. | 23% |
| Robert E. Roland, III | 23% |
| Jesse Dickens | 23% |
| Reed Shahan | 23% |
| Chuck Dorrity | 8% |

20. Relevant to this cause is also the ownership of TDR, as follows, TDR Ownership prior to September 25, 2015 was as follows:

| | |
|---|---|
| Robert Roland | 1/3rd |
| Trey Roland | 1/3rd |
| Tina Roland | 1/3rd |

21. Due to Robert Roland's divorce from Tina Roland (See Ex. F Agreed Final Decree of Divorce), TDR Ownership on and after September 25, 2015 was as follows:

| | |
|---|---|
| Robert Roland | 2/3rd |



Copy from re:SearchTX

Trey Roland 1/3rd

22. Robert Roland and Trey Roland at all times relevant to this cause and between 2013 and 2016 acted in concert in a scheme to transfer millions of dollars from Three Global to TDR.

23. Since it officially commenced operations in 2013, Three Global has and did at all times relevant to this cause provide water-related oilfield services such as poly-piping, pit-lining, and pump and generator rentals. Robert Roland, Trey Roland, Dickens, Shahan, and Dorrity are all managers of Three Global. Shahan and Dorrity have, at all relevant times, been passive investors in Three Global, who exercised de minimus to no control over the day-to-day affairs of the company. Three Global has suspended active business operations as of approximately January or February 2019, but prior to such suspension, Dickens managed and supervised the company's field operations, while Robert Roland and Trey Roland completely controlled the administrative and financial aspects of Three Global's business at all times relevant to this cause. Trey Roland and Robert Roland as early as 2014 were listed as "managing members" in Public Information reports filed with the Texas Secretary of State. Trey Roland signed the vast majority of checks and authorized virtually all financial transactions for both Three Global and TDR for the time period 2013 through 2016 until Trey disassociated with Three Global in approximately February of 2017. Robert Roland, however, signed at least 50 to 100 different checks on behalf of Three Global between 2013 and 2015 totaling in excess of $800,000, with more than half of those being checks from Three Global to TDR.

24. Beginning in approximately 2013 and continuing through at least February of 2017, Defendants Robert Roland and Trey Roland, acting in concert with the other Defendants, took advantage of their positions of financial trust by engaging in a concerted scheme to plunder the assets of Three Global and defraud the other members of Three Global, namely Shahan, Dorrity and Dickens by (i) utilizing Three Global assets for their own enrichment, (ii) making dozens or



Copy from re:SearchTX

hundreds of unauthorized, fraudulent, and self-dealing payments, and (iii) ultimately usurping all of Three Global's business—resulting in millions of dollars of damages to Plaintiffs.

25. From June 19, 2013 through December 31, 2018, Three Global showed operating losses during each fiscal year, and never made a single distribution to Dickens, Shahan, or Dorrity. Despite this fact, between July 22, 2013 and April 7, 2017, Robert Roland and Trey Roland caused Three Global to issue in excess of one hundred and fifty (150) checks, wires, and debits from Three Global to TDR, resulting in the transfer approximately seven million dollars ($7,000,0000) from Three Global to TDR from June 19, 2013 through December 31, 2016, including but not limited to those shown in Exhibit A, *Summary of Checks, Wires, and Debits from Three Global to TDR* ("Summary of Transfers to TDR") and including but not limited to those listed in Exhibit B, *Copies of Checks from Three Global to TDR* ("Checks to TDR") as well as other transfers and checks written to TDR to be shown at the trial of this cause including but not limited to those shown in (Exhibit B-2 Flournoy Ex. 22, Flournoy 000455 through Flournoy 000624). In addition, Three Global made various other highly suspicious transfers without the knowledge or consent of Dickens, Shahan and Dorrity and for non-legitimate business reasons to various Defendants other than TDR from 2013 through 2016.

26. Upon information and belief, many of these payments between 2013 and 2016 were for Three Global "payroll" which would in the ordinary course of normal business correlate to actual employees, even though Three Global did not list any employees in its Texas Workforce Commission Reports until January of 2017. Three Global paid millions of dollars in "payroll" expenses during 2013 to 2016 despite Three Global having no employees of record with the Texas Workforce Commission during that time period. The first time that Three Global listed employees with the Texas Workforce Commission was in 2017. TDR is believed to have initially processed



Copy from re:SearchTX

Three Global's payroll while a Quickbooks accounting system was set up for Three Global. However, even after Three Global's Quickbooks accounting system had been set up and Three Global had incurred monthly fees in connection with the same—at the latest, January 9, 2014—early 2017 Robert and Trey Roland caused Three Global to issue at least $6,422,661.09 in checks, wires, and debits from Three Global to TDR, many millions of which were for "payroll" and in excess of $6.2 million in transfers from January 9, 2014 through end of 2016. *See Exhibit A-2, Flournoy Report 12, pages 1 through Flournoy 000277 to Flournoy 000279 (Summary of Checks and Debits from Three Global Wells Fargo Account to TDR).* Over the slightly expanded date range of June 19, 2013 through December 31, 2016 Three Global paid in excess of $6.7 million dollars for payroll/labor and contract labor to TDR. These transfers were made without the knowledge or consent of the other members and managers of Three Global and were not for legitimate business purposes or were inflated, overcharged or wholly illegitimate as a scheme of Trey Roland and Robert Roland to funnel monies from Three Global to TDR.

27. More specifically, Three Global wrote millions of dollars in "payroll" checks to TDR and TDR significantly marked up the "payroll" charges such that Three Global paid far in excess of the contract labor amounts it should have paid to TDR, resulting in severe overpayment of payroll costs by Three Global in 2013 through 2016 in amounts in excess of $1,600,000 and unjustly enriching TDR and its owners Trey Roland and Roland Jr. In fact, because Three Global had and listed no employees in its federal tax returns or with any governmental authority, all amounts paid to TDR for "payroll" were highly suspect and a fraudulent diversion of funds directly from Three Global to TDR, unjustly the owners of TDR Robert Roland and Trey Roland.

28. From September 28, 2015 to December 20, 2016, Robert Roland and Trey Roland caused Three Global to write at least twelve (12) checks from Three Global to 365 Outdoors—the



Copy from re:SearchTX

personal hunting and outdoor company of Trey Roland—in an amount of at least $80,074.95. *See* Exhibit C, *Summary of Checks, Wires, and Debits from Three Global to 365 Outdoors* ("Summary of Transfers to 365 Outdoors"); Exhibit D, *Copies of Checks from Three Global to 365 Outdoors* ("Checks to 365 Outdoors"). All of these transfers were made without the knowledge or consent of the other members and managers of Three Global, and for no legitimate purpose—indeed, upon information and belief, 365 Outdoors is engaged in providing services related to recreational hunting and associated outdoor activities, and Three Global never requested or received any such services from 365 Outdoors.

29. From June 26, 2013 to September 28, 2018, a sum of $624,581.12 was drawn from Three Global's checking account in cash via ATM or counter withdrawals. Upon information and belief, all or a portion of these cash withdrawals as well as other cash withdrawals between 2013 and 2016 were highly suspect and made without a legitimate business purpose and for the exclusive enrichment of Defendants. *See* Exhibit E, *Summary of Three Global Cash Withdrawals* ("Cash Withdrawals Summary").

30. While Robert Roland and Trey Roland's pattern of systematically looting Three Global continued uninterrupted from at least 2013 through 2016 , two key periods are particularly illustrative of the brazenness of Defendants' transgressions.

31. First, from July 16, 2013 to January 16, 2014, Shahan provided Three Global with startup cash infusions aggregating $640,000.00 (Exhibit L, from Flournoy Expert Report dated October 3, 2022, Flournoy 000144). Over this time, Three Global's banking records show, in essence, that Shahan's contributions were being pulled out of the company's account as fast as they came in, in the form of cash withdrawals and checks to TDR. In fact, during this time period, at least $433,829 in checks were written to TDR from Three Global, and another $65,927 was



Copy from re:SearchTX

withdrawn from Three Global's account in cash—an aggregate of $499,756, a sum constituting 75% of the amount invested by Shahan. *See Exhibit M, From Flournoy Expert Report Dated October 3, 2022, Flournoy 000153 Checks to TDR and Flournoy 000154.*

32. Second, bank records and public records/court filings appear to strongly suggest—if not conclusively demonstrate—that Robert Roland and TDR used Three Global funds to satisfy obligations incurred in connection with Robert Roland's 2015 divorce from his wife, Tina Roland. The Rolands' divorce proceeding was heard in Scurry County on July 27, 2015, and an Agreed Final Decree of Divorce was entered on September 25, 2015. *See* Exhibit F, *Agreed Final Decree of Divorce* ("Divorce Decree"). The Divorce Decree provided, *inter alia*, that Robert Roland would pay, as a part of the division of the Rolands' estate, the balance due on a promissory note ("Note") executed by TDR in the original principal sum of $427,814.98. *Id*. at 7. On July 28, 2015—*the day after the Rolands' divorce hearing was held*—a cash withdrawal of $141,441.12 was made from Three Global's bank account. *Cash Withdrawals Summary*. TDR eventually paid of the note on January 5, 2016, after receiving numerous other transfers from Three Global. *See* Exhibit G, *Release of Lien*. *See also Cash Withdrawals Summary*; *Summary of Transfers to TDR*.

33. Robert Roland, Trey Roland, TDR, and Ten 22, in addition to making the numerous fraudulent and unlawful transfers described above, also engaged in numerous other schemes to utilize and divert Three Global's funds and assets for their own exclusive benefit.

34. Robert Roland and Trey Roland regularly paid TDR and/or Ten 22 employees for TDR and/or Ten 22 work using Three Global funds, including employees Josh New, Mike Spec, and Billy Stallings, who were paid as employees of Three Global despite performing all or nearly all of their work for TDR and Ten 22. On at least one occasion, one of these employees, Josh New, has stated that he sat in Trey Roland's office while the two of them fabricated fraudulent invoices to



Copy from re:SearchTX

send to Three Global for payment. Robert Roland and Trey Roland further regularly utilized Three Global equipment and supplies to perform jobs on behalf of TDR and caused TDR to keep all proceeds of such work. In multiple instances, Robert Roland and Trey Roland absconded with equipment titled to Three Global, and kept such equipment on premises owned or leased by TDR and/or Total Supply, and used such equipment solely in connection with TDR and/or Total Supply work. In other instances, they damaged Three Global equipment doing work for TDR and then caused Three Global to pay for repairs to such equipment. They caused Three Global to provide satellite phones for TDR employees and retain advertisers and consultants for TDR at Three Global's expense. Additionally, Trey Roland utilized Three Global employees and funds to re-model a boutique business owned by his wife called the "Pink Pug."

35. In one particularly egregious case, Robert Roland and Trey Roland diverted a number of lucrative jobs for the Rock Oil Lease from Three Global to TDR. Not content to merely usurp the business, the Rolands then caused vendors, including Smith Industries, Inc., to bill hundreds of thousands of dollars of equipment, materials, and services to Three Global in connection with the Rock Oil Lease jobs, and caused Three Global to pay a substantial portion of these invoices—despite the fact that all such costs were incurred solely by TDR and all benefit of such work inured solely to TDR. Three Global was ultimately involved in litigation arising from Smith Industries, Inc. invoices left unpaid by TDR in connection with the Rock Lease Oil jobs. *See Smith Industries, Inc. v. Three Global, LLC and TDR Services, Inc.*, Cause No. CV53240, in the 441st District Court, Midland County, Texas.

36. In another instance, Trey Roland caused Three Global to lease a 2015 GMC Sierra 2500HD Denali and pay tens of thousands of dollars on the vehicle, before applying such payments towards a purchase option and titling the vehicle first in his own name and later to TDR, without



Copy from re:SearchTX

providing any reimbursement to the Company. *See* Exhibit H, *2015 GMC Sierra 2500 HD Denali Lease Agreement*; Exhibit I, *GMC Sierra 2500 HD Denali Registration Details*.

37. Robert Roland and Trey Roland further caused Three Global to make numerous illegitimate payments to Ten 22, purportedly for consulting services, when in reality such services were never provided.

38. Tinsley is a close associate of Robert Roland and Trey Roland, who has participated and continues to participate with Robert Roland and Trey Roland in numerous joint business ventures. Tinsley, acting in concert with Robert and Trey Roland, conspired to fraudulently divert funds and assets of Three Global for their own enrichment.

39. Upon information and belief, Tinsley and/or his staff drew salaries, wages, and/or benefits from Three Global in connection with work performed exclusively for the benefit of TDR and other entities. Tinsley also used Three Global assets and funds to perform work for TDR and/or Total Supply.

40. Furthermore—despite the fact that Three Global was not a customer of Total Supply—Tinsley, acting, upon information and belief, in concert with Robert Roland and Trey Roland, caused Three Global to issue illegitimate payments to Total Supply aggregating at least $190,360.45. *See* Exhibit J, *Checks to Total Supply*.

41. In early 2017, Dickens, Shahan, and Dorrity became suspicious of Robert Roland and Trey Roland's operation of Three Global. When Robert Roland and Trey Roland observed the suspicion of their partners, they absconded from Three Global's offices with the company's computers, financial records, and vehicle/equipment titles. Upon information and belief, Robert Roland and Trey Roland did so in order to conceal their unlawful activity in the operation of Three Global.



Copy from re:SearchTX

42. Shortly thereafter, Robert Roland and Trey Roland ceased operation of Three Global and funneled all of Three Global's business to TDR, Total Supply, Industrial Oilfield and/or other entities owned and operated by Defendants. Now, rather than merely providing roustabout services, TDR provides the water-related oilfield services such as poly-piping, pit-lining, and pump and generator rentals which were previously provided by Three Global. Similarly, Industrial Oilfield, which was formed by Trey Roland and Jason Tinsley in 2018 shortly after the Rolands' departure from Three Global, has now cannibalized much of Three Global's former business. Additionally, Industrial Oilfield now maintains custody and control of Three Global equipment, without Three Global's permission or consent.

43. Defendants Robert Roland, Trey Roland and Tinsley acted individually and as agents of their respective Defendant companies TDR, Ten 22, 365 Outdoors, Industrial Oilfield and Total Supply as officers, directors, managers, members, majority owners, governing persons and employees of their respective companies at all times relevant to this cause to systematically defraud Plaintiffs by transferring monies and property away from Three Global during 2013 through 2016 described in at least the following transactions, including many others to be shown at trial of this cause:

A. Three Global paid millions of dollars in wages, employee benefits, payroll tax and arbitrary and capricious mark-ups on "payroll" billed from TDR to Three Global at a time when Three Global had no employees. On information and belief, Three Global paid "payroll" for contract labor from TDR that Three Global utilized as well as, at times between 2013 and 2016, Thee Global also paid, not only for TDR workers that Three Global utilized, but Three Global also paid amounts actually greater than the entire payroll for TDR's employees utilized by TDR as well.



Copy from re:SearchTX

B. Removal by Trey Roland of in excess of $141,000 in a single withdrawal "other debit withdrawal from a branch / store" transaction from the Three Global operating bank account and deposit the same day into Trey and wife Ashley Roland's personal bank account.

C. Utilizing monies from Three Global and monies shifted from Three Global to TDR for payoff of Robert Roland personal loans and TDR loans at First Bank & Trust and payoff of other obligations pertaining to Robert Roland's 2015 divorce.

D. An illegitimate transfer of $65,000 from Three Global to TDR, then writing a $55,000 check from TDR to Three Global allegedly for a purchase a "ditcher" piece of equipment then sold or transferred from Three Global to TDR, such ditcher worth approximately $55,000, disgorging $10,000 net cash and a ditcher from Three Global to TDR.

E. Transfer of monies and a Toyota Tundra truck worth in excess of $5,000 to Robert Roland's then girlfriend, Beth Nail.

F. Payments from Three Global to Trey Roland's personal outdoor hunting and fishing company, 365 Outdoors, in excess of $80,000.

G. Payments from Three Global to Tony Dry in excess of $150,000.

H. "Owner Draws" purportedly from TDR to its owners Robert Roland and Trey Roland, at least in the amount of and in excess of $400,000 during 2013 through 2016 which were reimbursed or transferred in whole or in part from Three Global to TDR at time when other Three Global owners Jesse Dickens, Reed Shahan, and Chuck Dorrity received no proportionate share of such "draws" or any distributions from Three Global. More specifically, Robert Roland received Owner Draws, vehicle reimbursements, office expense and shareholder distributions totaling in excess of $132,000 in a time period between December 2013 and April of 2016, with one-half of all the Owner Draws paid by Three



Copy from re:SearchTX

Global. One-half of all Owners draws paid to Trey Roland and Robert Roland were reimbursed from Three Global to TDR at a time when no owners' draws were paid to the other owners of Three Global Jesse Dickens, Reed Shahan, or Chuck Dorrity.

I. Automotive truck payments on a 2013 Dodge Ram financed through First Financial Bank for Robert Roland (promissory note signed by Robert Roland as a manager of Three Global) at a time when Robert Roland was also already receiving a monthly "auto allowance."

J. Transfers or deposits to Trey Roland's personal accounts of the bulk of monies $386,000 purportedly obtained as an investment or loan for Three Global from Bill Stallings, when very little, if any of the funds were deposited into the Three Global bank account or utilized for the business of Three Global, but rather were used for the personal benefit at the direction of Trey Roland.

K. Usurpations of corporate opportunities of Three Global wherein Trey Roland and Robert Roland coordinated the funneling and transferring of business opportunities of Three Global with Diamondback Energy, SM Energy, Trailridge, and Rock Oil to TDR and other companies and away from Three Global.

L. Suspect transfers and payments from Three Global for what is known as the Rock Oil jobs of in excess of $1,000,000.00.

M. Assignment of a factoring agreement for Three Global invoices, assigning the funds available from factoring Three Global invoices to TDR at the same time that Three Global made payments to the applicable factoring company.

N. Vehicles paid for by Three Global and utilized for TDR.

O. Checks made out to pay Three Global but deposited in into the TDR operating bank



Copy from re:SearchTX

account including but not limited to checks from Midland Oil and Gas.

P. Booking the actual purchase of a ditcher transaction in quickbooks as a "building sale" demonstrating the arbitrary, capricious and deceptive nature of Trey Roland and Robert Roland bookkeeping practices.

Q. Other miscellaneous transfers for personal expenses such as fitness charges, charges at Gebo's (a hunting and ranch supply store), western clothing and $10,000 in an unspecified transfer with no general ledger entry, such transfers shown in the Three Global general ledger for the time period April of 2015 through December 22, 2015, such transfers totaling in excess of $14,000.00.

R. Three Global paid monies to TDR for Blue Cross Blue Shield premiums for TDR's employee's insurance premiums during 2013 to 2016 at a time when Three Global had no employees.

S. Many other transfers of equipment and monies away from Three Global that are to be proved at the trial of this cause all to the detriment of the Three Global and Plaintiffs Shahan, Dorrity and Dickens.

44. As a result of Robert Roland and Trey Roland's absconsion with Three Global's books and records, failure to produce a single document in discovery in this case, and likely destruction of documents relevant to this cause, Plaintiffs' have faced substantial hardship in bringing the claims stated in this case. Ultimately, Plaintiffs successfully retained a forensic accountant in January of 2019 and were able to compile evidence sufficient to support a case using bank records to which Plaintiffs had access and publicly available records. Plaintiffs did not discover and could not have reasonably discovered the various nefarious transactions and misconduct of Defendants prior to that time since Plaintiffs had been effectively "shut out" by Defendants from



Copy from re:SearchTX

access or knowledge of such facts and information.

45. As described hereinabove, and as to be further discovered or proven in this case, Defendants acted in concert to funnel millions of dollars away from Three Global during 2013 through 2016 all to the damage of Plaintiffs, for which Plaintiffs now bring this suit.

## V.
## CAUSES OF ACTION – DIRECT AND DERIVATIVE

46. Three Global is a closely held Limited Liability Company defined by TEX. BUS. ORG. CODE § 101.463. Pre-suit notice for a derivative action as described at §§ 101.452–101.459, is inapplicable as to a closely held entity. Accordingly, Plaintiffs may, and hereby do, assert the following claims against Defendants in both Dickens, Shahan, and Dorrity's individual capacities and derivatively on behalf of Three Global. Plaintiff respectfully asks that any judgment granted upon the claims made hereunder be paid either directly to Dickens, Shahan, and Dorrity or to Three Global, as justice and the protection of creditors' interests may require. *Id*. § 101.463(c)(1)–(2).

### FIRST CAUSE OF ACTION
### CLAIM I

### BREACH OF FIDUCIARY DUTY

47. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

48. As managers of Three Global, Robert Roland and Trey Roland owed the company Three Global fiduciary duties, which included general duties of loyalty, duty of care, duty of candor, duty of full disclosure, a duty of loyalty and utmost good faith, (*see, e.g., Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942)), a duty to refrain from self-dealing (*see, e.g., Dearing, Inc. v. Spiller*, 824 S.W.2d 728, 733 (Tex. App.—Fort Worth 1992)), a duty not to usurp corporate opportunities for personal gain (*see, e.g., International Bankers Life*



Copy from re:SearchTX

*Ins. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)), a duty to fully disclose personal interests in transactions with the company (*see, e.g., General Dynamics v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995)), a duty to use uncorrupted business judgment for the sole benefit of the company (*see, e.g., International Bankers*, 368 S.W.2d at 577). More specifically, in addition to their positions as governing persons, managers, managing members and members of Three Global, because Robert Roland and Trey Roland occupied a special place of confidence and trust as to their running of the finances, banking, and day to day business transactions and check signing of Three Global, Robert Roland and Trey Roland had a fiduciary relationship and owed fiduciary duties to Three Global and the individual Plaintiffs Dorrity, Shahan and Dickens.

49. By making numerous self-dealing payments without the authorization or knowledge of the other members and managers of the company, utilizing the funds, assets, and resources of the Company for personal enrichment, siphoning off Three Global's business and redirecting it to TDR, Industrial Oilfield, Total Supply and/or other Defendant entities, and engaging in such other actions described in this *First Amended Petition*, Robert Roland and Trey Roland breached these fiduciary duties to Three Global.

50. Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply had knowledge of Robert Roland and Trey Roland's fiduciary duties and knowingly participated in, aided, abetted, and benefitted from the breach of such duties; accordingly, Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply are jointly and severally liable with Robert Roland and Trey Roland for these breaches.

51. Defendants' conduct and specifically Robert Roland and Trey Roland's breaches of the duties outlined above, proximately caused damages and injury to Three Global in the



Copy from re:SearchTX

amounts of millions of dollars in actual damages for which , Plaintiffs now sue, directly and derivatively, and further plead for exemplary damages herein.

## SECOND CAUSE OF ACTION
## CLAIM II

## BREACH OF CONTRACT

52. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

53. Three Global's Company Regulations ("Company Regulations") constituted a valid and enforceable contract between Plaintiffs, Robert Roland, and Trey Roland. Plaintiffs are proper parties to bring forward suit against Robert Roland and Trey Roland for various breaches of the Company Regulations. A true and accurate copy of the Company Regulations is attached hereto as Exhibit "K."

54. Plaintiffs performed under the terms of the Company Regulations.

55. The Company Regulations provided, *inter alia*, that the profits and losses of Three Global would be distributed on a pro rata basis. *See* Company Regulations § 2.1(C) (allocating distributive shares pro rata among then-existing members). *See also* TEX. BUS. ORG. CODE § 101.109(a) "A person who is assigned a membership interest in a limited liability company is entitled to . . . receive any distribution the assignor is entitled to receive to the extent the distribution is assigned . . . .")).

56. Robert Roland and Trey Roland's self-dealing payments from the Three Global coffers constituted direct and/or constructive distributions. Accordingly, Robert Roland and Trey Roland, breached Section 2.1(C) of the Company Regulations by not allowing Dickens, Shahan, and Dorrity to share pro rata in the distributions pursuant to their ownership interests.

57. The Company Regulations further provided that property owned or purchased by



Copy from re:SearchTX

Three Global would be held, owned, and conveyed by Three Global, and that instruments providing for the disposition of property of Three Global would be valid only if executed after agreement of a quorum of members. Company Regulations § 8.1. By disposing of Three Global property without a quorum of the members of the Company, Robert Roland and Trey Roland breached this provision of the Company Regulations.

58. The Company Regulations further prohibited members of the Company from undertaking or performing certain actions without written consent of all members, including but not limited to the following: (i) entering into a promise to pay any material written debts, liabilities or obligations for or on behalf of the Company (Section 1.2(A)); (ii) Making, executing or delivering for the Company any bond, mortgage, deed of trust, guarantee, indemnity bond, surety bond or accommodation paper or accommodation endorsement (Section 1.2(D)); (iii) Borrowing money in the name of the Company or using Company assets as collateral (Section 1.2(E)); (iv) assigning, transferring, pledging, compromising or releasing any claim of or debt owing to the Company except upon payment in full, (Section 1.2(F)); and (v) agreeing to pay interest and set other terms of loans to the Company from its members as described in Section 2.1(B).

59. By unilaterally causing Three Global to incur fraudulent payment obligations to TDR, 365 Outdoors, Ten 22, and Total Supply, Robert Roland and Trey Roland violated at least the foregoing provisions of the Company Regulations as well as other provisions to be proved at the trial of this cause, constituting multiple breaches of the thereof, and causing damage to Plaintiffs for which Plaintiffs now sue.

60. The Company Regulations further provided that generally accepted accounting principals would govern the company's books, and that the company would maintain complete books and records of account. Company Regulations §§ 3.1, 4.1. By causing the company to



Copy from re:SearchTX

incur fraudulent expenses, designating constructive distributions as expenses, and removing and/or destroying the Three Global's books and records, Robert Roland and Trey Roland violated these provisions of the Company Regulations, constituting multiple breaches thereof, and causing damages to Plaintiffs for which Plaintiffs now sue.

61. By at least the breaches complained of herein and other breaches of the Company Regulations which may be proved at trial of this cause, Defendants Robert Roland and Trey Roland caused millions of dollars in actual damages to Plaintiffs, for which Plaintiffs now sue directly and derivatively. Plaintiffs' injury was a natural, probable, and foreseeable consequence of Defendants Robert Roland's and Trey Roland's breaches of contract.

62. Because the breaches of contract by Defendants Robert Roland and Trey Roland occurred as a result of malice or through fraud, Plaintiffs also seek an award of exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.003(a).

**THIRD CAUSE OF ACTION**
**CLAIM III**

**TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT**

63. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

64. TDR, 365 Outdoors, Ten 22, Industrial Oilfield and Total Supply were at all times relevant to this cause acting by and through their respective officers, directors, managers, members, governing persons and owners specifically Tinsley, Robert Roland and Trey Roland.

65. Defendants Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply, acting by and through their officers, directors, managers, members, governing persons and owners specifically Tinsley, Robert Roland and Trey Roland were all aware of the Company Regulations, which constituted a valid contract between Plaintiffs, Robert Roland, and Trey



Copy from re:SearchTX

Roland.

66. Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply acting by and through their officers, directors, managers, members, governing persons and owners specifically Tinsley, Robert Roland and Trey Roland willfully and intentionally interfered with the contract by participating in and benefitting from Robert Roland and Trey Roland's breaches of the Company Regulations.

67. By their tortious interference described above with the Company Regulations, Defendants Defendants Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply's proximately caused millions of dollars in damages to Plaintiffs in Plaintiffs suffered actual monetary damages and losses for which Plaintiffs now sue directly and derivatively.

68. Because the tortious interference with an existing contract by Defendants occurred as a result of malice or through fraud, Plaintiffs also seek an award of exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.003(a).

**FOURTH CAUSE OF ACTION**
**CLAIM IV**

**CIVIL THEFT**

69. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

70. Three Global had a possessory right to the monies in its bank accounts and the property titled under its name. By taking funds and property of Three Global under false and fraudulent pretenses and without the knowledge or consent of the other members and managers of the Company, Defendants unlawfully appropriated the company's property.

71. Defendants intended to withhold the appropriated property permanently, and Defendants intended to deprive Three Global of the monies and property.



Copy from re:SearchTX

72. Further, Plaintiffs Shahan, Dorrity and Dickens had a possessory right to distributions of cash and profits of Three Global commensurate with their ownership interest in Three Global.

73. Defendants' actions to divert funds and property away from Three Global, constituted disgorging and depriving Plaintiffs to profits and to distributions of same from Three Global.

74. Defendants specifically Robert Roland and Trey Roland as well as other Defendants intended to deprive Plaintiffs of the funds and property transferred wrongfully away from Three Global.

75. These acts constitute theft within the meaning of CIV. PRAC. & REM. CODE §§134.001 –134.005

76. As a result of Defendants' theft, Plaintiffs suffered and sustained damages in the form of deprivation of property for which Plaintiffs now sue directly and derivatively for actual damages, $1,000 in statutory damages (TEX. CIV. PRAC. & REM. CODE 134.005), exemplary damages (TEX. CIV. PRAC. & REM. CODE 41.008) and for attorney fees (TEX. CIV. PRAC. & REM CODE 134.005).

**FIFTH CAUSE OF ACTION**
**CLAIM V**

**<u>FRAUD BY NON-DISCLOSURE</u>**

77. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

78. Defendants, each and all, concealed materials facts from Plaintiffs, such as the facts that (i) Three Global was not, in fact, operating at a loss, but was extremely profitable, (ii) Three Global was making constructive distributions to Robert Roland and Trey Roland, (iii) substantial



Copy from re:SearchTX

payments were being made to Tinsley, TDR, 365 Outdoors, Ten 22, and Total Supply despite the fact that these Defendants were not providing goods or performing services for Three Global, (iv) Three Global funds, property, and employees were being used for the benefit of TDR, 365 Outdoors, Ten 22, Industrial Oilfield, Total Supply, Tinsley, Robert Roland, and Trey Roland, (v) that certain opportunities had been presented or made available to Three Global, (vi) that Three Global's business opportunities were being funneled to TDR, Industrial Oilfield, and/or other Defendant entities, which were performing the available work and profiting from the same at Three Global's expense, (vii) that Defendants were providing Three Global with false invoices, (viii) that Three Global was making excessive and fraudulent payroll payments to TDR at a time when Three Global had no employees, (ix) that TDR was "marking up" alleged payroll invoices to Three Global and charging a fee for processing payments from Three Global to TDR disguised as "payroll" payments to TDR, and many other QuickBooks transactions, cash withdrawals, and transfers of money and property away from Three Global pleaded herein and to be proved at trial of this cause

79. Defendants knew that Plaintiffs were ignorant of these facts and did not have an equal opportunity to discover these facts—indeed, Defendants even took steps to make sure that Plaintiffs *could not* discover these facts, as evidenced by Robert Roland and Trey Roland's appropriation and/or destruction of Three Global's books and records, constituting spoliation of evidence and evidence of Defendants intent to defraud Plaintiffs.

80. Defendants were deliberately silent and failed to disclose the foregoing material matters concerning Three Global business when Defendants Robert Roland and Trey Roland had a duty to disclose these facts to Plaintiffs, both because Robert Roland and Trey Roland owed Three Global a fiduciary duty of candor and other fiduciary duties pleaded herein, and because all



Copy from re:SearchTX

Defendants (i) created false impressions by making partial disclosures, and (ii) voluntarily disclosed some information, creating a duty to disclose the full truth. By failing to disclose these facts, Defendants intended to induce Plaintiffs to continue to remit payments to or for the benefit of Defendants and to not investigate or take further action related to Defendants' misconduct.

81. Plaintiffs relied on these non-disclosures by forbearing from taking appropriate action, legal or otherwise, to recover depleted property and ensure the cessation of this unlawful conduct. Additionally, Plaintiffs relied on these non-disclosures by remitting payments to or for the benefit of Defendants. As a result, Plaintiffs sustained millions of dollars in damages, for which they now sue directly and derivatively.

**SIXTH CAUSE OF ACTION**
**CLAIM VI**

**COMMON LAW FRAUD**

82. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

83. Defendants knowingly made material misrepresentations as to (i) the financial status of the Company, and (ii) the nature and scope of work performed by the Defendant entities by representing that the company was operating at a loss and that the Defendant entities had provided goods and services to Defendant, when in fact, Three Global was very profitable and all profits were being skimmed off to pay fraudulent invoices for goods and services which the Defendant entities were not actually performing or providing. Robert Roland and Trey Roland further represented that company funds, property, and employees were being used for the benefit of Three Global, when in reality such funds, property, and employees were being utilized for their own personal enrichment as well as the enrichment of the various Defendant entities and Tinsley. Additionally, Robert Roland and Trey Roland represented that Dickens, Shahan, and Dorrity



Copy from re:SearchTX

would share equally in Three Global's distributions, despite the fact that, as evinced by their immediate actions, they planned to begin making constructive, undisclosed distributions for their own exclusive benefit. Similarly, Robert Roland and Trey Roland represented that Three Global would perform water-related goods and services in a synergistic relationship with TDR's roustabout business, when in reality they intended to use TDR and Industrial Oilfield to cannibalize Three Global's business. Additionally, TDR, 365 Outdoors, Tinsley, Ten 22, and Total Supply represented that fraudulent invoices were legitimate.

84. Defendants intended that Plaintiffs rely upon these material deceptions, misrepresentations, and concealed acts. Moreover, Plaintiffs did rely on Defendants representations by, *inter alia*, (i) agreeing to contribute capital and sweat equity to Three Global, (ii) forbearing from taking obvious legal action to recover misappropriated funds, property, and corporate opportunities and prevent the ongoing continuation of such conduct, and (iii) making payments to Defendants or for Defendants' benefit. As a result of this reliance, Plaintiffs sustained millions of dollars of damages for which they now sue, directly and derivatively for actual damages, loss of benefit of the bargain damages as owners of Three Global, exemplary damages and court costs as well as a constructive trust on all funds and property wrongfully disgorged from Three Global and individual Plaintiffs. Defendants acted with the intent that Plaintiffs rely upon Defendants deceptive and fraudulent acts and omissions constituting common law fraud to be proved by direct or circumstantial evidence at the trial of this cause.

85. To the extent any fraudulent representations were made by Robert Roland and Trey Roland only, Tinsley, TDR, 365 Outdoors, Ten 22, Industrial Oilfield, and Total Supply had knowledge of and benefitted from the fraud effectuated by the same, and accordingly are vicariously liable with Robert Roland and Trey Roland for such fraud. Further, Defendant entities



Copy from re:SearchTX

TDR, 365 Outdoors, Ten 22, Industrial Oilfield and Total Supply were vicariously liable for the various acts of their agents, officers, directors, managers, members, governing persons and employees participating in and committing the acts constituting common law fraud pleaded herein.

**SEVENTH CAUSE OF ACTION**
**CLAIM VII**

**DTPA VIOLATIONS**

86. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

87. Three Global, acting under Robert Roland and Trey Roland's direction, sought to acquire good and services from Defendants TDR, 365 Outdoors, Ten 22, and Total Supply as evinced by the numerous payments made from Three Global to these Defendants. At all relevant times, Three Global had assets totaling less than $25 million. Accordingly, Three Global was a consumer within the meaning of the Texas Deceptive Trade Practices Consumer Protection Act, TEX. BUS. & COM. CODE § 17.01 et seq. (the "DTPA"). See *id.* § 17.45(4).

88. Defendants, each and all, constitute persons as that term is used in TEX. BUS. & COM. CODE § 17.50(a)(1). *See id*. § 17.45(3).

89. Defendants, acting in concert, committed numerous violations of the DTPA. Particularly, by presenting Three Global with fraudulent invoices describing goods and services with were never provided or performed and/or presenting Three Global with fraudulent invoices describing goods and services which were actually provided by Three Global itself, rather than the Defendant entities, Defendants (i) passed off goods and services as those of another, (ii) represented that goods and services had characteristics, ingredients, uses, benefits, or quantities which they did not have, (iii) represented that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced, and (iv)



Copy from re:SearchTX

failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

90. These actions constitute violations of TEX. BUS. & COM. CODE § 17.46(b)(1, 5, 22, 24). Additionally, these acts and omissions constitute unconscionable actions and omissions that are actionable pursuant to TEX. BUS. & COM. CODE § 17.50(a)(3).

91. As a result of these violations, Plaintiffs sustained millions of dollars in actual damages, for which Plaintiffs now sue, directly and derivatively.

92. Further, since the acts were committed knowingly and intentionally, Plaintiffs are entitled to treble damages, in addition to all other damages available under the DTPA, as provided by TEX. BUS. & COM. CODE § 17.50(b)(1).

**EIGHTH CAUSE OF ACTION**
**CLAIM VIII**

**CONVERSION**

93. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

94. Plaintiff Three Global owned and possessed the company's funds, the work product of its employees, and the assets which were titled to it. Plaintiffs Dickens, Shahan, and Dorrity had a right to immediate possession of a pro rata share of all distributions made by Three Global or all distributable funds held by Three Global.

95. Defendants wrongfully exercised dominion or control of the personal property described above, unlawfully appropriating the same.

96. As a result, Plaintiffs were deprived of the property, suffering millions of dollars in



Copy from re:SearchTX

damages for which they now sue, directly and derivatively.

**NINTH CAUSE OF ACTION**
**CLAIM IX**

**MONEY HAD AND RECEIVED**

97. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

98. Defendants possess money which belongs to Plaintiffs in equity and good conscience. The constructive distributions, fraudulent payments, business usurpations, and illegitimate uses of Three Global's assets and funds for Defendants' personal gain described herein resulted in Defendants' possession of funds to which Plaintiffs are rightfully entitled, to wit, the proceeds from their joint business venture.

99. Accordingly, Plaintiffs are entitled to recover from Defendants the funds which belong to Plaintiffs and were wrongfully received by Defendants.

**TENTH CAUSE OF ACTION**
**CLAIM X**

**UNJUST ENRICHMENT**

100. Plaintiffs reallege the facts set forth in the preceding paragraphs and incorporate the same as if fully restated herein.

101. Plaintiffs seek relief under the equitable doctrine of unjust enrichment. Unjust enrichment is an equitable doctrine holding that one who receives benefits unjustly should make restitution for those benefits. A person is unjustly enriched when they obtain a benefit from another by fraud, duress, or the taking of an undue advantage.

102. Here, Defendants obtained millions of dollars in benefits by conveying funds, usurping corporate opportunities, generating and paying false invoices, and using Three Global's



Copy from re:SearchTX

resources for personal gain, under false pretenses and by, while acting in concert, taking undue advantage of Robert Roland and Trey Roland's status as fiduciaries of Three Global.

103. More specifically, Trey Roland and Robert Roland acted in concert to funnel monies from Three Global to TDR at a time when Plaintiffs received no distributions from Three Global and Plaintiffs had no ownership interest in TDR.

104. As a result of this conduct, Defendants have obtained a benefit which would be unconscionable to retain.

**ELEVENTH CAUSE OF ACTION**
**CLAIM XI**

**DECLARATORY JUDGMENT**

105. Plaintiffs incorporate by reference the facts set forth above and fully incorporate the same herein verbatim.

106. Pursuant to Chapter 37 of the TEX. CIV. PRAC. & REM. CODE, Plaintiffs hereby petition the Court for a declaration regarding a justiciable controversy surrounding the acts of Defendants Trey Roland and Robert Roland in utilizing Three Global resources and assets for personal expenditures and diverting Three Global monies assets to themselves.

107. Plaintiffs hereby request that the Court declare such personal expenditures, transfers of property and funds from Three Global to TDR and other Defendants as "constructive dividends" or "constructive distributions" in which Shahan, Dorrity, and Dickens should have received their pro-rata share according to their ownership in Three Global.

108. Further, Plaintiffs hereby request that the Court declare that Plaintiffs is entitled to a *pro rata* distribution based upon the amount of "constructive dividends" or "constructive distributions" Trey Roland and Robert Roland diverted for personal benefit and to unjustly enrich themselves from the Three Global operating account. Plaintiffs pray for their distributions



Copy from re:SearchTX

according to their then-current ownership in Three Global at the time of any such "constructive dividend" or "constructive distribution" as set forth in the Regulations of Three Global as referenced above.

109. Further, Shahan, Dickens and Dorrity requests that the Court construe the Regulations of Three Global as well as other Three Global corporate documents showing the ownership percentages of Plaintiffs Shahan, Dickens and Dorrity in Three Global, including the Certificate of Formation, Regulations, any tax returns showing K-1s and ownership percentages of Shahan, Dickens and Dorrity and find and make declaration as to the following:

a. the amount of actual Three Global cash distributions made during calendar years 2013 through 2016 to which Plaintiffs Shahan, Dickens and Dorrity are entitled their *pro rata* share according to their Three Global ownership pursuant to the Regulations, the TBOC, and the other corporate documents and tax returns showing ownership of Three Global;

b. a declaration of the exact amount of Trey Roland and Robert Roland personal and non-business expenditures and transfers from Three Global, including from the Three Global operating account, and a finding that such expenditures were constructive distributions to Trey Roland and Robert Roland; and

c. a declaration of the exact amount of Shanhan, Dickens, and *pro rata* share of the constructive distributions made by Trey Roland and Robert Roland from Three Global;

110. Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009, Plaintiffs are entitled to recover from Defendants including but not limited to Robert Roland and Trey Roland, Plaintiff's reasonable and necessary attorney's fees incurred in bringing this request for declaratory judgment.

## VI.
## DISCOVERY RULE

111. Plaintiffs affirmatively plead that the discovery rule tolls the statute of limitations for all causes of action asserted against Defendants herein until such time that Plaintiffs could reasonably discover facts giving rise to the claims asserted herein which is no earlier than January



Copy from re:SearchTX

22, 2019 when Plaintiffs retained a forensic investigator to trace funds at issue in this case and investigate financial transactions among Three Global and the Defendants named herein. Prior to that time, Plaintiffs had been effectively "shut out" by Defendants from access or knowledge of such facts and information, as evidence in part by Trey Roland's removal of all company books, data, files, and computers from the Three Global office in 2017, and Defendants' subsequent apparent intentional loss or destruction of all such documents and information.

## VII.
## ATTORNEY'S FEES AND COSTS

112. Plaintiffs seek attorneys' fees and court costs (including but not limited to filing fees, service fees, expert fees and costs, as well any and all other court costs) pursuant to Article 11.3 of the Company Regulations, TEX. CIV. PRAC. & REM. CODE § 30.001, TEX. CIV. PRAC. & REM. CODE § 134.005, and TEX. BUS. & COM. CODE §17.50(d), and as otherwise may be recoverable by law.

113. Additionally, with respect to all claims stated for which recovery of attorney's fees is not expressly authorized by contract or statute, Plaintiffs maintain that they are nonetheless entitled to recovery of attorneys' fees with respect to such claims, as such claims are inextricably conjoined with successful prosecution of the Breach of Contract, DTPA, and Civil Theft claims.

## VIII.
## CONSTRUCTIVE TRUST

114. Plaintiffs plead for a constructive trust to be imposed on all Defendants monies and real and personal property to the extent and representing money and property wrongfully transferred away from Three Global and Plaintiffs and from which all Plaintiffs were deprived by all Defendants as pleaded herein.



Copy from re:SearchTX

## IX.
## REQUESTS FOR DISCLOSURE

115. Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs hereby request that Defendants disclose or supplement the information or material described in Rule 194.

## X.
## TEMPORARY INJUNCTION

116. Plaintiffs also respectfully request that the Court keep in place the Temporary Injunction against Defendants Robert Roland and Trey Roland entered on October 2, 2019 until the completion of trial of this Cause.

## XI.
## PRAYER

FURTHER, Plaintiffs pray that upon final trial of this cause, that Plaintiffs be awarded all damages and judgments to which they are entitled against Defendants, including but not limited to:

(a) Actual damages incurred as a result of Defendants conduct, including but not limited to monetary compensation commensurate with (i) the millions of dollars in unauthorized payments and/or constructive distributions to Defendants, (ii) the value of Three Global materials, goods, services, and equipment expended for the benefit of Defendants, (iii) the value of all property converted or wrongfully possessed by Defendants, (iv) the sums expended in payment of fraudulent invoices for goods and services which were never provided, (v) proceeds earned or to be earned by means of usurpation of corporate opportunity; (vi) diminution in value of Three Global and of Plaintiffs' ownership interest in Three Global; (vii) all sums by which Robert Roland and Trey Roland were unjustly enriched from the various illegitimate transfers of monies from Three Global for the benefit of Robert Roland and Trey Roland personally to entities owned and controlled by them including but not limited to TDR, 365 Outdoors and Ten 22 Consulting.

(b) Statutory damages in the amount of $1,000.00 pursuant to TEX. CIV. PRAC. & REM. CODE §134.005;

(c) Treble damages pursuant to TEX. BUS. & COM. CODE §17.50(d);

(d) Punitive and/or exemplary damages as allowed by law;



Copy from re:SearchTX

(e) Attorney's fees, court costs, and expenses;

(f) Pre-judgment and post-judgment interest at the highest rate provided by law; and

(g) For such other and further relief to which Plaintiffs may show themselves to be justly entitled, at law or in equity.

Respectfully submitted,

**DAVIDSON SHEEN, LLP**
Lubbock Office:
12405 Quaker Avenue
Lubbock, Texas 79424
Midland/Odessa Office:
5050 E. University Blvd., Suite 1
Odessa, Texas 79762
Phone: (806) 412-6000
Facsimile: (806) 412-6010

By: __/s/ Brad J. Davidson____
**Brad J. Davidson**
Texas Bar No. 24036439
brad@davidsonsheen.com
**Tommy Sheen**
Texas Bar No. 24056623
tsheen@davidsonsheen.com
**Carter Bowers**
Texas Bar No. 24086718
carter@davidsonsheen.com
***Attorneys for Plaintiffs***



Copy from re:SearchTX

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Texas e-file system and/or as otherwise permitted by the Texas Rules of Civil Procedure to the following counsel of record and *pro se* litigant(s) on this the 24th day of October, 2022:

Joel Amos Gordon
joel@joelgordonlaw.com
P.O. Box 52688
Midland, Texas 79710
***Attorney for Defendants TDR Services, Inc., 365 Outdoors, Inc., Ten 22 Consulting, Inc. and Robert Roland, III***

Patrick H. Cordero, Jr.
patrickcordero@gmail.com
1605 North Big Spring Street
Midland, Texas 79701
***Attorney for Defendants Total Supply & Rental, LLC, Industrial Oilfield, LLC and Jason Tinsley***

***Via USPS Regular Mail***
Robert E. Roland, Jr.
4419 E. County Road 60
Midland, Texas 79705
***Pro Se Defendant***

*/s/ Brad J. Davidson*
**Brad J. Davidson**



Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jaime Cruce on behalf of Brad Davidson
Bar No. 24036439
jcruce@davidsonsheen.com
Envelope ID: 69513058
Status as of 10/24/2022 4:11 PM CST

Associated Case Party: Three Global, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tommy D.Sheen | | tsheen@davidsonsheen.com | 10/24/2022 3:45:22 PM | SENT |
| Brad Davidson | | brad@davidsonsheen.com | 10/24/2022 3:45:22 PM | SENT |
| Carter Bowers | | carter@davidsonsheen.com | 10/24/2022 3:45:22 PM | SENT |
| Jaime Cruce | | jcruce@davidsonsheen.com | 10/24/2022 3:45:22 PM | SENT |
| Eservice davidsonsheen | | ds@davidsonsheen.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: TDR Services, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joel AmosGordon | | joel@joelgordonlaw.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: 365 Outdoors, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joel AmosGordon | | joel@joelgordonlaw.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: Ten 22 Consulting, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joel AmosGordon | | joel@joelgordonlaw.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: RobertE.Roland

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joel AmosGordon | | joel@joelgordonlaw.com | 10/24/2022 3:45:22 PM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jaime Cruce on behalf of Brad Davidson
Bar No. 24036439
jcruce@davidsonsheen.com
Envelope ID: 69513058
Status as of 10/24/2022 4:11 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Patrick Cordero | | patrickhcordero@gmail.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: Total Supply & Rental, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Patrick Cordero | | patrick@patrickcorderolawfirm.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: Industrial Oilfield Construction LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Patrick Cordero | | patrick@patrickcorderolawfirm.com | 10/24/2022 3:45:22 PM | SENT |

Associated Case Party: Jason Tinsley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Patrick Cordero | | patrick@patrickcorderolawfirm.com | 10/24/2022 3:45:22 PM | SENT |

Copy from re:SearchTX