EXHIBIT
Y

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 24, 2024**

Mark X. Mullin
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT EUGENE ROLAND, III, | § | CASE NO. 24-40756-mxm7 |
| | § | (Chapter 7) |
| DEBTOR | § | |
| | § | |
| THREE GLOBAL, LLC, JESSE DICKENS, | § | |
| REED SHAHAN, and CHUCK DORRITY | § | |
| | § | |
| Plaintiffs | § | Adversary No. 24-04063-mxm |
| v. | § | |
| | § | |
| ROBERT EUGENE ROLAND, III, | § | |
| | § | |
| Defendant | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL JUDGMENT AGAINST ROBERT EUGENE ROLAND III**

On this day came for consideration the Motion for Final Default Judgment against Robert Eugene Roland III (the "Motion") filed by Three Global, LLC, Chuck Dorrity, Reed Shahan, and Jesse Dickens (collectively "Plaintiffs"). The Court reviewed the files and records herein, including the Motion, exhibits, the Affidavit of Bruce Flournoy and the exhibits attached thereto,

and the Declaration of Hudson M. Jobe; heard argument from the parties at the hearing on October 15, 2024 regarding the Motion, and was fully advised in the premises. Robert Eugene Roland III (the "Defendant") did not answer, object, or contest the allegations in the Complaint or in the Plaintiffs' Motion for Final Default Judgment. As such, all of the allegations asserted therein are admitted. Based on the foregoing, the Court enters the following Findings of Fact and Conclusions of Law against the Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and claims asserted in this proceeding under 28 U.S.C. § 1334. The claims against the Defendant constitutes a core matter under 28 U.S.C. § 157(b)(2)(A) as they involve administration of the estate. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

### II. FINDINGS OF FACT[1]

2. Plaintiffs and the Defendant were partners in an oilfield services company. This lawsuit arises out of a conspiracy by the Defendant and other parties to defraud the Plaintiffs by misappropriating funds and other property, including by secretly funneling money and customers to other entities owned by the Defendant and his co-conspirators. Plaintiffs had previously sued the Defendant and his co-conspirators in state court before this bankruptcy case filed shortly before the state court trial. Plaintiffs severed out the Defendant and proceeded against the other parties (the "Judgment Defendants"), and obtained a joint and several judgment against those defendants in the amount of $3,950,914.42, plus costs and interest.

3. With respect to damages in this case, Plaintiffs' have included an affidavit of their forensic accountant that details the total damage amount of $4,024,292.63.

---

[1] Where a finding of fact is actually a conclusion of law, it shall be treated as such and vice-versa.

25-07009-smr Doc#4-26 Filed 04/09/25 Entered 04/09/25 10:41:01 Exhibit Y Pg 3 of 32

4. The defendant has not attempted to defend the claims in this case. By their Motion, Plaintiff's request the Court to enter a final judgment against the Defendant, to order that such judgment is non-dischargeable, and to enter an order denying the Defendant's discharge.

5. On August 1, 2024, Plaintiffs filed their Complaint to Determine Claim, Dischargeability of Debt, and Objection to Discharge (Dkt. No 1) against Robert Eugene Roland, III.

6. The Defendant has failed to file any answer or motion responding to the Complaint by the September 11, 2024 deadline or to seek an extension of the deadline.

7. The Clerk entered a default against the Defendant on September 13, 2024.

8. The Defendant is not a minor, incompetent, or in military service.

9. This case arises from the concerted action of the Defendant and his father Robert E. Roland, Jr. to systematically loot the assets of Three Global through theft, fraud, deceit, and breaches of various duties in order to enrich themselves and their entities,[2] which are each and all jointly owned and operated by the Defendant and his father and utilized jointly by them as part of a unified and connected series of business ventures.

10. Plaintiff Three Global was formed on May 2, 2008 by filing a Certificate of Formation with the Secretary of the State of Texas. In approximately 2013—desiring to branch out into a new field in the oil and gas industry because their roustabout business, TDR, was floundering—Robert Roland, Jr. and Defendant induced Dickens, Shahan, and Dorrity to join the Company in exchange for capital contributions and/or the provision of sweat equity.

11. Robert Roland, Jr. and the Defendant represented that the purpose of the company would be to provide water-related oilfield services such as poly-piping, pit-lining, and pump and generator rentals, and that the Three Global water business would enjoy a synergistic relationship

[2] TDR Services, Inc. ("TDR"), 365 Outdoors, Inc. ("365 Outdoors"),

with TDR's existing roustabout business. Ultimately, Dickens, Shahan, and Dorrity affiliated with Three Global in mid-2013, with Dickens providing extensive knowledge and industry connections for water- related sales and services, Dorrity providing valuable financial connections, and Shahan providing approximately $640,000 in capital funding.

12. Since June 19, 2013, Robert Roland, Jr., the Defendant, Dickens, Shahan, and Dorrity have been the only members of Three Global, and the company is owned as follows:

| Name | Membership Interest Percentage |
|---|---|
| Robert E. Roland, Jr. | 23% |
| Robert E. Roland, III | 23% |
| Jesse Dickens | 23% |
| Reed Shahan | 23% |
| Chuck Dorrity | 8% |

13. Relevant to this cause is also the ownership of TDR, as follows, TDR Ownership prior to September 25, 2015 was as follows:

| | |
|---|---|
| Robert E. Roland. Jr. | 1/3rd |
| Robert E. Roland, III | 1/3rd |
| Tina Roland | 1/3rd |

14. Due to Robert Roland, Jr.'s divorce from Tina Roland, TDR Ownership on and after September 25, 2015 was as follows:

| | |
|---|---|
| Robert E. Roland. Jr. | 2/3rd |
| Robert E. Roland, III | 1/3rd |

15. Robert Roland, Jr. and the Defendant at all times relevant to this cause and between 2013 and 2016 acted in concert in a scheme to transfer millions of dollars from Three Global to TDR.

16. Since it officially commenced operations in 2013, Three Global has and did at all times relevant to this cause provide water-related oilfield services such as poly-piping, pit-lining,

and pump and generator rentals. Robert Roland, Jr., the Defendant, Dickens, Shahan, and Dorrity are all managers of Three Global. Shahan and Dorrity have, at all relevant times, been passive investors in Three Global, who exercised de minimus to no control over the day-to-day affairs of the company. Three Global has suspended active business operations as of approximately January or February 2019, but prior to such suspension, Dickens managed and supervised the company's field operations, while Robert Roland, Jr. and the Defendant completely controlled the administrative and financial aspects of Three Global's business at all times relevant to this cause. The Defendant and Robert Roland, Jr. as early as 2014 were listed as "managing members" in Public Information reports filed with the Texas Secretary of State. The Defendant signed the vast majority of checks and authorized virtually all financial transactions for both Three Global and TDR for the time period 2013 through 2016 until the Defendant disassociated with Three Global in approximately February of 2017. Between 2013 and 2015, Robert Roland, Jr signed at least 50 to 100 different checks on behalf of Three Global totaling in excess of $800,000. More than half of the checks were written from Three Global to TDR.

17. Beginning in approximately 2013 and continuing through at least February of 2017, the Defendant, acting in concert with the Defendant's Companies, and Robert Roland, Jr., , took advantage of their positions of financial trust by engaging in a concerted scheme to plunder the assets of Three Global and defraud Plaintiffs by (i) utilizing Three Global assets for their own enrichment, (ii) making dozens or hundreds of unauthorized, fraudulent, and self-dealing payments, and (iii) ultimately usurping all of Three Global's business—resulting in millions of dollars of damages to Plaintiffs.

18. From June 19, 2013 through December 31, 2018, Three Global showed operating losses during each fiscal year, and never made a single distribution to Dickens, Shahan, or Dorrity. Despite this fact, between July 22, 2013 and April 7, 2017, Robert Roland, Jr. and the Defendant

25-07020-smr Doc#1-20 Filed 10/24/24 Entered 10/24/24 16:02:02 Pg 6 of 32

caused Three Global to issue in excess of one hundred and fifty (150) checks, wires, and debits from Three Global to TDR, resulting in the transfer approximately seven million dollars ($7,000,0000) from Three Global to TDR from June 19, 2013 through December 31, 2016, as well as other transfers and checks written to TDR. In addition, Three Global made various other highly suspicious transfers without the knowledge or consent of Dickens, Shahan and Dorrity and for non-legitimate business reasons to various defendants other than TDR from 2013 through 2016.

19. TDR is believed to have initially processed Three Global's payroll while a Quickbooks accounting system was set up for Three Global. However, even after Three Global's Quickbooks accounting system had been set up and Three Global had incurred monthly fees in connection with the same—at the latest, January 9, 2014—early 2017 Robert Roland, Jr. and the Defendant caused Three Global to issue at least $6,422,661.09 in checks, wires, and debits from Three Global to TDR, many millions of which were for "payroll" and in excess of $6.2 million in transfers from January 9, 2014 through end of 2016. Over the slightly expanded date range of June 19, 2013 through December 31, 2016 Three Global paid in excess of $6.7 million dollars for payroll/labor and contract labor to TDR. These transfers were made without the knowledge or consent of Plaintiffs and were not for legitimate business purposes or were inflated, overcharged or wholly illegitimate as a scheme of the Defendant and Robert Roland, Jr. to funnel monies from Three Global to TDR.

20. More specifically, Three Global wrote millions of dollars in "payroll" checks to TDR and TDR significantly marked up the "payroll" charges such that Three Global paid far in excess of the contract labor amounts it should have paid to TDR, resulting in severe overpayment of payroll costs by Three Global in 2013 through 2016 in amounts in excess of $1,136,578.00 and unjustly enriching TDR and its owners, the Defendant and Robert Roland, Jr. These markups were made without the knowledge or consent of Dorrity, Shahan, or Dickens and went directly into the

pocket of Defendant and Robert Roland, Jr.

21. From September 28, 2015 to December 20, 2016, the Defendant caused Three Global to write at least twelve (12) checks from Three Global to 365 Outdoors— the Defendant's personal hunting and outdoor company—in an amount of at least $ $81,570.00. All of these transfers were made without the knowledge or consent of Plaintiffs, and for no legitimate purpose—indeed, 365 Outdoors is engaged in providing services related to recreational hunting and associated outdoor activities, and Three Global never requested or received any such services from 365 Outdoors.

22. The Defendant, Robert Roland, Jr., TDR, and Ten 22, in addition to making the numerous fraudulent and unlawful transfers described above, also engaged in numerous other schemes to utilize and divert Three Global's funds and assets for their own exclusive benefit.

23. The Defendant and Robert Roland, Jr. regularly paid TDR and/or Ten 22 employees for TDR and/or Ten 22 work using Three Global funds, including employees Josh New, Mike Spec, and Billy Stallings, who were paid as employees of Three Global despite performing all or nearly all of their work for TDR and Ten 22. On at least one occasion, one of these employees, Josh New, has stated that he sat in Defendant's office while the Defendant and Robert Roland, Jr. fabricated fraudulent invoices to send to Three Global for payment. Further, the Defendant and Robert Roland, Jr. regularly utilized Three Global equipment and supplies to perform jobs on behalf of TDR and caused TDR to keep all proceeds of such work. In multiple instances, the Defendant and Robert Roland, Jr. absconded with equipment titled to Three Global, and kept such equipment on premises owned or leased by TDR and/or Total Supply, and used such equipment solely in connection with TDR and/or Total Supply work. In other instances, they damaged Three Global equipment doing work for TDR and then caused Three Global to pay for repairs to such equipment. the Defendant and Robert Roland, Jr. caused Three Global to provide satellite phones for TDR

employees and retain advertisers and consultants for TDR at Three Global's expense. Additionally, the Defendant utilized Three Global employees and funds to re-model a boutique business owned by his wife called the "Pink Pug."

24. In one particularly egregious case, the Defendant and Robert Roland, Jr. diverted several lucrative jobs for the Rock Oil Lease from Three Global to TDR. Not content to merely usurp the business, the Defendant and Robert Roland, Jr. then caused vendors, including Smith Industries, Inc., to bill hundreds of thousands of dollars of equipment, materials, and services to Three Global in connection with the Rock Oil Lease jobs, and caused Three Global to pay a substantial portion of these invoices—despite the fact that all such costs were incurred solely by TDR and all benefit of such work inured solely to TDR. Three Global was ultimately involved in litigation arising from Smith Industries, Inc. invoices left unpaid by TDR in connection with the Rock Lease Oil jobs. *See Smith Industries, Inc. v. Three Global, LLC and TDR Services, Inc.*, Cause No. CV53240, in the 441st District Court, Midland County, Texas.

25. In another instance, the Defendant caused Three Global to lease a 2015 GMC Sierra 2500HD Denali and pay tens of thousands of dollars on the vehicle, before applying such payments towards a purchase option and titling the vehicle first in the Defendant's own name and later to TDR, without providing any reimbursement to the Company.

26. The Defendant and Robert Roland, Jr. further caused Three Global to make numerous illegitimate payments to Ten 22, purportedly for consulting services, when in reality such services were never provided.

27. In early 2017, Dickens, Shahan, and Dorrity became suspicious of the Defendant and Robert Roland Jr.'s operation of Three Global. When the Defendant and Robert Roland, Jr. observed the suspicion of their partners, they absconded from Three Global's offices with the company's computers, financial records, and vehicle/equipment titles. It appears they did so in

order to conceal their unlawful activity in the operation of Three Global.

28. Shortly thereafter, the Defendant and Robert Roland, Jr. ceased operation of Three Global and funneled all of Three Global's business to TDR, Total Supply, Industrial Oilfield and/or other entities owned and operated by the Defendant. Now, rather than merely providing roustabout services, TDR provides the water-related oilfield services such as poly-piping, pit-lining, and pump and generator rentals which were previously provided by Three Global. TDR has now cannibalized much of Three Global's former business. Additionally, TDR took control and now maintains custody and control of Three Global equipment, without Three Global's permission or consent.

29. The Defendant, and Robert Roland, Jr., acted individually and as agents of the Defendant's respective companies TDR, Ten 22, 365 Outdoors, Industrial Oilfield and Total Supply as an officer, director, manager, member, majority owner, governing person and employee of the respective companies at all times relevant to this cause to systematically defraud Plaintiffs by transferring monies and property away from Three Global during 2013 through 2016 described in at least the following transactions, including many others to be shown at trial of this cause:

a. Three Global paid millions of dollars in wages, employee benefits, payroll tax and arbitrary and capricious mark-ups on "payroll" billed from TDR to Three Global at a time when Three Global had no employees. Three Global paid "payroll" for contract labor from TDR that Three Global utilized as well as, at times between 2013 and 2016, Three Global also paid, not only for TDR workers that Three Global utilized, but Three Global also paid amounts greater than the entire payroll for TDR's employees utilized by TDR as well.

b. Removal by the Defendant of in excess of $141,000 in a single withdrawal "other debit withdrawal from a branch / store" transaction from the Three Global operating bank account and deposit the same day into the Defendant's and wife Ashley Roland's personal bank account.

c. Utilizing monies from Three Global and monies shifted from Three Global to TDR for payoff of Robert Roland, Jr.'s personal loans and TDR loans at First Bank & Trust and payoff of other obligations pertaining to Robert Roland, Jr.'s 2015 divorce.

d. Payments from Three Global to the Defendant's personal outdoor hunting and fishing company, 365 Outdoors, in excess of $80,000.

e. "Owner Draws" purportedly from TDR to its owners, the Defendant and Robert Roland, Jr., at least in the amount of and in excess of $ 163,835.59 during 2013 through 2016 which were reimbursed or transferred in whole or in part from Three Global to TDR at time when other Three Global owners Jesse Dickens, Reed Shahan, and Chuck Dorrity received no proportionate share of such "draws" or any distributions from Three Global. More specifically, Robert Roland, Jr. received Owner Draws, vehicle reimbursements, office expense and shareholder distributions totaling in excess of $132,000 in a time period between December 2013 and April of 2016, with one-half of all the Owner Draws paid by Three Global. One-half of all Owners Draws paid to the Defendant and Robert Roland, Jr. were reimbursed from Three Global to TDR at a time when no owners' draws were paid to the other owners of Three Global Jesse Dickens, Reed Shahan, or Chuck Dorrity.

f. Automotive truck payments on a 2013 Dodge Ram financed through First Financial Bank for Robert Roland, Jr. (promissory note signed by Robert Roland, Jr. as a manager of Three Global) at a time when Robert Roland, Jr. was also already receiving a monthly "auto allowance."

g. Transfers or deposits to the Defendant's personal accounts of the bulk of monies $386,000 purportedly obtained as an investment or loan for Three Global from Bill Stallings, when very little, if any of the funds were deposited into the Three Global bank account or utilized for the business of Three Global, but rather were used for the personal benefit at the direction of the Defendant.

h. Usurpations of corporate opportunities of Three Global wherein the Defendant and Robert Roland, Jr. coordinated the funneling and transferring of business opportunities of Three Global with Diamondback Energy, SM Energy, Trailridge, and Rock Oil to TDR and other companies and away from Three Global.

i. Suspect transfers and payments from Three Global for what is known as the Rock Oil jobs of in excess of $1,303,969.04.

j. Assignment of a factoring agreement for Three Global invoices, assigning the funds available from factoring Three Global invoices to TDR at the same time that Three Global made payments to the applicable factoring company.

k. Vehicles paid for by Three Global and utilized for TDR.

l. Checks made out to pay Three Global but deposited in into the TDR operating bank account including but not limited to checks from Midland Oil and Gas.

m. Booking the actual purchase of a ditcher transaction in quickbooks as a "building sale" demonstrating the arbitrary, capricious and deceptive nature of the Defendant and Robert Roland, Jr.'s bookkeeping practices.

n. Other miscellaneous transfers for personal expenses such as fitness charges, charges at Gebo's (a hunting and ranch supply store), western clothing and $10,000 in an unspecified transfer with no general ledger entry, such transfers shown in the Three Global general ledger for the time period April of 2015 through December 22, 2015, such transfers totaling in excess of $14,000.00.

o. Three Global paid monies to TDR for Blue Cross Blue Shield premiums for TDR's employee's insurance premiums during 2013 to 2016 at a time when Three Global had no employees.

p. Many other transfers of equipment and monies away from Three Global all to the

detriment of Plaintiffs.

30. As a result of the Defendant, and the Defendant's Companies, absconsion with Three Global's books and records, failure to produce a single document in discovery in this case, and likely destruction of documents relevant to this cause, Plaintiffs have faced substantial hardship in bringing the claims stated in this case. Ultimately, Plaintiffs successfully retained a forensic accountant in January of 2019 and were able to compile evidence sufficient to support a case using bank records to which Plaintiffs had access and publicly available records. Plaintiffs did not discover and could not have reasonably discovered the various nefarious transactions and misconduct of the Defendant acting in concert with Defendant's Companies, prior to that time since Plaintiffs had been effectively "shut out" by Defendant from access or knowledge of such facts and information.

31. As described hereinabove, the Defendant acted in concert with TDR Services, Inc., 365 Outdoors, Inc., to funnel millions of dollars away from Three Global during 2013 through 2016 all to the damage of Plaintiffs.

## DAMAGES

32. J. Bruce Flournoy, a forensic accountant and certified fraud investigator provided an affidavit to the court which details, through the records of Defendant, TDR, and Three Global, that Plaintiffs have been damaged as follows:

| | |
|---|---|
| Unauthorized Owners Draws | $ 163,835.59 |
| Unauthorized Loans to Trey Roland | $ 141,441.12 |
| Fraudulent Markup of payroll | $1,136,578.00 |
| Fraud related to Rock Oil transfers | $1,303,969.04 |
| Fraud related to 365 Outdoors | $ 82,800.00 |
| Loss in Valuation | $4,625,000.00 |
| Total | $7,452,393.75 |

Because Plaintiffs own 54% of Three Global, the damage to Plaintiffs is 54% of the total or $4,024,292.63.

## III. CONCLUSIONS OF LAW

## CAUSES OF ACTION

33. Three Global is a closely held Limited Liability Company defined by TEX. BUS. ORG. CODE § 101.463. Pre-suit notice for a derivative action as described at §§ 101.452–101.459, is inapplicable as to a closely held entity. Accordingly, Plaintiffs have asserted the following claims against the Defendant in both Dickens, Shahan, and Dorrity's individual capacities and derivatively on behalf of Three Global.

### COUNT ONE
### BREACH OF FIDUCIARY DUTY

34. As manager of Three Global, the Defendant owed Three Global fiduciary duties, which included general duties of loyalty, duty of care, duty of candor, duty of full disclosure, a duty of loyalty and utmost good faith, (*see, e.g., Kinzbach Tool Co. v. Corbett-Wallace Corp*., 160 S.W.2d 509, 512 (Tex. 1942)), a duty to refrain from self- dealing (*see, e.g., Dearing, Inc. v. Spiller*, 824 S.W.2d 728, 733 (Tex. App.—Fort Worth 1992)), a duty not to usurp corporate opportunities for personal gain (*see, e.g., International Bankers Life Ins. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)), a duty to fully disclose personal interests in transactions with the company (*see, e.g., General Dynamics v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995)), a duty to use uncorrupted business judgment for the sole benefit of the company (see, e.g., International Bankers, 368 S.W.2d at 577). More specifically, in addition to the Defendant's position as governing person, manager, managing member and member of Three Global, because the Defendant occupied a special place of confidence and trust as to their running of the finances, banking, and day to day business transactions and check signing of Three Global, the Defendant had a fiduciary relationship and owed fiduciary duties to Plaintiff Three Global and the individual Plaintiffs Dorrity, Shahan and Dickens.

35. By making numerous self-dealing payments without the authorization or knowledge of the other members and managers of the company, utilizing Three Global funds, assets, and resources for personal enrichment, siphoning off Three Global's business and redirecting it to TDR, and/or other the Defendant Companies, the Defendant breached these fiduciary duties to Three Global.

36. The Defendant's conduct breaches of the duties outlined above, proximately caused damages and injury to Three Global in the amounts of at least $7,452,393.75 in actual damages.

**COUNT TWO**
**BREACH OF CONTRACT**

37. Three Global's Company Regulations ("Company Regulations") constituted a valid and enforceable contract between Plaintiffs and the Defendant. Plaintiffs are proper parties to bring forward suit against the Defendant for various breaches of the Company Regulations.

38. Plaintiffs performed under the terms of the Company Regulations.

39. The Company Regulations provided, *inter alia*, that the profits and losses of Three Global would be distributed on a pro rata basis. See Company Regulations § 2.1(C) (allocating distributive shares pro rata among then-existing members). See also TEX. BUS. ORG. CODE § 101.109(a) "A person who is assigned a membership interest in a limited liability company is entitled to . . . receive any distribution the assignor is entitled to receive to the extent the distribution is assigned ")).

40. The Defendant's self-dealing payments from the Three Global coffers constituted direct and/or constructive distributions. Accordingly, the Defendant breached Section 2.1(C) of the Company Regulations by not allowing Dickens, Shahan, and Dorrity to share pro rata in the distributions pursuant to their ownership interests.

41. The Company Regulations further provided that property owned or purchased by

Three Global would be held, owned, and conveyed by Three Global, and that instruments providing for the disposition of property of Three Global would be valid only if executed after agreement of a quorum of members. Company Regulations § 8.1. By disposing of Three Global property without a quorum of the members of the Company, the Defendant breached this provision of the Company Regulations.

42. The Company Regulations further prohibited members of the Three Global from undertaking or performing certain actions without written consent of all members, including but not limited to the following: (i) entering into a promise to pay any material written debts, liabilities or obligations for or on behalf of Three Global (Section 1.2(A)); (ii) Making, executing or delivering for Three Global any bond, mortgage, deed of trust, guarantee, indemnity bond, surety bond or accommodation paper or accommodation endorsement (Section 1.2(D)); (iii) Borrowing money in the name of Three Global or using Three Global assets as collateral (Section 1.2(E)); (iv) assigning, transferring, pledging, compromising or releasing any claim of or debt owing to Three Global except upon payment in full, (Section 1.2(F)); and (v) agreeing to pay interest and set other terms of loans to Three Global from its members as described in Section 2.1(B).

43. By unilaterally causing Three Global to incur fraudulent payment obligations to TDR, 365 Outdoors, Ten 22, and Total Supply, the Defendant violated at least the foregoing provisions of the Company Regulations as well as other provisions, constituting multiple breaches of the thereof, and causing damage to Plaintiffs.

44. The Company Regulations further provided that generally accepted accounting principals would govern the company's books, and that the company would maintain complete books and records of account. Company Regulations §§ 3.1, 4.1. By causing the Three Global to incur fraudulent expenses, designating constructive distributions as expenses, and removing and/or destroying the Three Global's books and records, the Defendant violated these provisions of the

Company Regulations, constituting multiple breaches thereof, and causing damages to Plaintiffs.

45. By at least the breaches complained of herein and other breaches of the Company Regulations, the Defendant caused millions of dollars in actual damages to Plaintiffs. Plaintiffs' injury was a natural, probable, and foreseeable consequence of the Defendant's breaches of contract.

**COUNT THREE**
**CIVIL CONSPIRACY**

46. Between 2013 and 2016, the Defendant and Robert Roland, Jr., and the Defendant's Companies pursued their unlawful course of action by ignoring their fiduciary duties and exploiting the Defendant and Robert Roland, Jr.'s positions of trust and to enrich themselves by utilizing Plaintiffs' assets for their own financial gain, making unauthorized, fraudulent, and self-dealing payments, and usurping Plaintiffs' business. The Defendant and Robert Roland, Jr., and the Defendant's Companies each became aware in a meeting of the minds that they desired to siphon money and resources from Plaintiffs. Each formed the specific intent to assist the other in bringing about this objective.

47. The Defendant and Robert Roland, Jr., and the Defendant's Companies were in an agreement to participate in a course of conduct directly in defiance of Three Global's Company Regulations—a contract and behavioral standard they each had actual knowledge of.

48. This agreement on a fraudulent course of conduct is evidenced by their pattern of repeatedly causing Plaintiffs to make unauthorized and concealed transactions benefiting the Defendant, Robert Roland, Jr., the Defendant's Companies, and individuals close to the Defendant and Robert Roland, Jr. *See Comcast Corp. v. Houston Baseball Partners*, 602 F.3d 398, 422–23 (Tex. App.—Houston [14th Dist.] 2021) (holding that repetition of misrepresentations was sufficient circumstantial evidence of common plan and intent).

49. The Defendant and Robert Roland, Jr., in their roles as fiduciaries of Plaintiff and the Defendant's Companies committed the following acts in furtherance of the conspiracy:

a. Caused Plaintiff to pay millions of dollars in wages employee benefits, insurance premiums, payroll tax and arbitrary and capricious mark-ups on what was purported to be "pay roll" at a time when Plaintiffs had no employees;

b. Withdrew funds from Plaintiffs' operating account and deposited them into the Defendant's personal bank account;

c. Shifted monies from Plaintiff to the Defendant's Companies to pay off Robert Roland, Jr.'s personal loans and obligations and TDR's loans;

d. Disgorging net cash proceeds from an illegitimate sale of equipment from an Plaintiffs to TDR;

e. Authorizing payments from Plaintiffs to the Defendant's Company, 365 Outdoors,;

f. Reimbursing or transferring funds from Plaintiffs to TDR for Owner Draws purportedly from TDR in whole or in part;

g. Authorizing automotive truck payments on a 2013 Dodge Ram financed through First Financial Bank for Robert Roland, Jr. (promissory note signed by Robert Roland, Jr. as a manager of Three Global) at a time when Robert Roland, Jr. was also already receiving a monthly "auto allowance;"

h. Usurping Plaintiffs' corporate opportunities wherein the Defendant and Robert Roland, Jr. coordinated the funneling and transferring of business opportunities of Three Global with Diamondback Energy, SM Energy, Trailridge, and Rock Oil to TDR and other companies and away from Plaintiffs;

i. Making suspect transfers and payments from Three Global for what is known as the Rock Oil jobs of in excess of $1,000,000.00;

j. Assigning a factoring agreement for Three Global invoices, assigning the funds available from factoring Three Global invoices to TDR at the same time that Three Global made payments to the applicable factoring company;

k. Paying for vehicles with Plaintiffs' funds and utilized for TDR;

l. Depositing checks into the TDR operating bank account but made out to pay Plaintiffs;

m. Booking the actual purchase of a ditcher transaction in quickbooks as a "building sale" demonstrating the arbitrary, capricious and deceptive nature of the Defendant and Robert Roland, Jr.'s bookkeeping practices;

50. As a direct and proximate cause of the Defendant's conspiracy with Robert Roland, Jr., and the Defendant's Companies, Plaintiffs sustained millions of dollars in damages.

**<u>COUNT FOUR</u>**
**AIDING AND ABETTING**

51. Robert Roland, Jr., and the Defendant's Companies each participated in a scheme to enrich themselves by utilizing Plaintiffs' assets for their own financial gain, making unauthorized, fraudulent, and self-dealing payments, and usurping Plaintiffs' business.

52. The Defendant had actual knowledge that the conduct of Robert Roland, Jr., and the Defendant's Companies as primary actors, constituted a tort by participating, observing, and reaping the financial benefits of the fraudulent acts. The Defendant agreed to a standard of conduct set by the Company Regulations but instead engaged in acts which contradict and breach that standard. The Defendant, and Robert Roland, Jr., were all aware of the standard set in the Company Regulations.

53. The Defendant had intent to assist the tortious conduct of Robert Roland, Jr., and the Defendant's Companies. The Defendant either participated in causing the fraudulent

25-07024-10163-mxm Doc 17 Filed 10/24/24 Entered 10/24/24 12:28:02 Exhibit Y Pg 19 of 32

transactions to take place or failed to report them to Plaintiffs as the person who possessed a fiduciary duty to do so.

54. By participating in the cause or failing to report the fraudulent transactions, the Defendant substantially assisted and encouraged Robert Roland, Jr., and the Defendant's Companies to cause the tort as they were allowed to continue their bad acts and receive considerable financial gain without any repercussions.

55. The Defendant's conduct was a substantial factor in causing the conduct of Robert Roland, Jr., and the Defendant's Companies' actions. The Defendant was in a position of complete control over the administrative and financial aspects of Plaintiffs' business. But for the Defendant's actions to either participate in the fraudulent activity or allow it to take place with no consequence, Robert Roland, Jr., and the Defendant's Companies would not, and likely could not, have persisted in their fraudulent scheme.

56. As a direct and proximate cause of the Defendant aiding and abetting the actions of Robert Roland, Jr., and the Defendant's Companies, Plaintiffs sustained millions of dollars in damages.

## COUNT FIVE
## TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT

57. TDR, 365 Outdoors, Ten 22, Industrial Oilfield and Total Supply were at all times relevant to this cause acting by and through their respective officers, directors, managers, members, governing persons and owners which included the Defendant.

58. The Defendant was aware of the Company Regulations, which constituted a valid contract between Plaintiffs and himself.

59. The Defendant willfully and intentionally interfered with the contract by participating in and benefitting from his breaches of the Company Regulations.

60. By his tortious interference described above with the Company Regulations, the Defendant proximately caused millions of dollars in damages to Plaintiffs and Plaintiffs suffered actual monetary damages and losses for which Plaintiffs.

**<u>COUNT SIX</u>**
**CIVIL THEFT**

61. Three Global had a possessory right to the monies in its bank accounts and the property titled under its name. By taking funds and property of Three Global under false and fraudulent pretenses and without the knowledge or consent of the other Three Global members and managers, the Defendant unlawfully appropriated the Plaintiff's property.

62. The Defendant intended to withhold the appropriated property permanently, and The Defendant intended to deprive Three Global of the monies and property.

63. Further, Plaintiffs Shahan, Dorrity and Dickens had a possessory right to distributions of cash and profits of Three Global commensurate with their ownership interest in Three Global.

64. The Defendant's actions to divert funds and property away from Three Global, constituted disgorging and depriving Plaintiffs to profits and to distributions of same from Three Global.

65. The Defendant intended to deprive Plaintiffs of the funds and property transferred wrongfully away from Three Global.

66. These acts constitute theft within the meaning of CIV. PRAC. & REM. CODE §§134.001 –134.005

67. As a result of the Defendant's theft, Plaintiffs suffered and sustained damages in the form of deprivation of property. (TEX. CIV. PRAC. & REM. CODE 134.005), exemplary damages (TEX. CIV. PRAC. & REM. CODE 41.008) and for attorney fees (TEX. CIV. PRAC. &

REM CODE 134.005).

**COUNT SEVEN**
**FRAUD BY NON-DISCLOSURE**

68. The Defendant concealed materials facts from Plaintiffs, such as the facts that (i) Three Global was not, in fact, operating at a loss, but was extremely profitable, (ii) Three Global was making constructive distributions to Robert Roland, Jr. and the Defendant, (iii) substantial payments were being made to TDR, 365 Outdoors, Ten 22, and Total Supply despite the fact that these companies were not providing goods or performing services for Three Global, (iv) Three Global funds, property, and employees were being used for the benefit of TDR, 365 Outdoors, Ten 22, Industrial Oilfield, Total Supply, Robert Roland, Jr. and the Defendant, (v) that certain opportunities had been presented or made available to Three Global, (vi) that Three Global's business opportunities were being funneled to TDR, Industrial Oilfield, and/or other companies of the Defendant, which were performing the available work and profiting from the same at Three Global's expense, (vii) that the Defendant was providing Three Global with false invoices, (viii) that Three Global was making excessive and fraudulent payroll payments to TDR at a time when Three Global had no employees, (ix) that TDR was "marking up" alleged payroll invoices to Three Global and charging a fee for processing payments from Three Global to TDR disguised as "payroll" payments to TDR, and many other QuickBooks transactions, cash withdrawals, and transfers of money and property away from Three Global pleaded herein and to be proved at trial of this cause.

69. The Defendant knew that Plaintiffs were ignorant of these facts and did not have an equal opportunity to discover these facts—indeed, the Defendant even took steps to make sure that Plaintiffs could not discover these facts, as evidenced by The Defendant's appropriation and/or destruction of Three Global's books and records, constituting spoliation of evidence and evidence

of the Defendant's intent to defraud Plaintiffs.

70. The Defendant was deliberately silent and failed to disclose the foregoing material matters concerning Three Global business when the Defendant had a duty to disclose these facts to Plaintiffs, the Defendant owed Three Global a fiduciary duty of candor and other fiduciary duties pleaded herein, and because the Defendant (i) created false impressions by making partial disclosures, and (ii) voluntarily disclosed some information, creating a duty to disclose the full truth. By failing to disclose these facts, the Defendant intended to induce Plaintiffs to continue to remit payments to or for the Defendant's own benefit and to not investigate or take further action related to the Defendant's misconduct.

71. Plaintiffs relied on these non-disclosures by forbearing from taking appropriate action, legal or otherwise, to recover depleted property and ensure the cessation of this unlawful conduct. Additionally, Plaintiffs relied on these non-disclosures by remitting payments to or for the benefit of the Defendant. As a result, Plaintiffs sustained millions of dollars in damages.

## COUNT EIGHT
## COMMON LAW FRAUD

72. The Defendant knowingly made material misrepresentations as to (i) Three Global's financial status, and (ii) the nature and scope of work performed by the Defendant's Companies by representing that the Three Global was operating at a loss and that the Defendant's Companies had provided goods and services, when in fact, Three Global was very profitable and all profits were being skimmed off to pay fraudulent invoices for goods and services which the Defendant's Companies were not actually performing or providing. The Defendant further represented that Three Global funds, property, and employees were being used for the benefit of Three Global, when in reality such funds, property, and employees were being utilized for their own personal enrichment as well as the enrichment of the Defendant's Companies.

73. The Defendant represented to Plaintiffs that Dickens, Shanan, and Dorrity would equally share in Three Global's distributions, despite the fact that the Defendant planned to make constructive and undisclosed distributions for the Defendant and the Judgment Defendant's exclusive benefit.

74. The Defendant further represented that Three Global was benefiting from company funds, property, and employees, when in reality, such Three Global assets were being utilized for the Defendant's own personal enrichment or enrichment to the Defendant's Companies. The Defendant, together with the Judgment Defendants, represented that Three Global would perform water-related services and provide goods in a synergistic relationship with TDR's roustabout business, when in reality, they intended to use the Defendant's Companies to dismantle Three Global's business. The Defendant and the Defendant's Companies represented that the fraudulent invoices for their goods and services were legitimate.

75. The Defendant intended that Plaintiffs rely upon these material misrepresentations and concealed acts. Plaintiffs did actually rely on the Defendant's representations by, (i) agreeing to contribute capital and sweat equity to Three Global, (ii) forbearing from taking obvious legal action to recover misappropriated funds, property, and corporate opportunities to prevent the ongoing continuation of such conduct, and (iii) making payments to the Defendant's Companies or for the Defendant's benefit.

76. As a result of Plaintiffs' reliance, Plaintiffs sustained millions of dollars in damages directly and derivatively by actual damages, loss of benefit of the bargain damages as owners of Three Global, exemplary damages, and court costs, as well as a constructive trust on all funds and property wrongfully disgorged from Plaintiffs.

## COUNT NINE
## DTPA VIOLATIONS

77. Three Global, acting under the Defendant's direction, sought to acquire good and services from the Defendant's Companies TDR, 365 Outdoors, Ten 22, and Total Supply as evidenced by the numerous payments made from Three Global to the Defendant's Companies. At all relevant times, Three Global had assets totaling less than $25 million. Accordingly, Three Global was a consumer within the meaning of the Texas Deceptive Trade Practices Consumer Protection Act, TEX. BUS. & COM. CODE § 17.01 et seq. (the "DTPA"). See id. § 17.45(4).

78. The Defendant constitutes a person as that term is used in TEX. BUS. & COM. CODE § 17.50(a)(1). See id. § 17.45(3).

79. The Defendant, acting in concert with the Judgment Defendants, committed numerous violations of the DTPA. Particularly, by presenting Three Global with fraudulent invoices describing goods and services with were never provided or performed and/or presenting Three Global with fraudulent invoices describing goods and services which were actually provided by Three Global itself, rather than the Defendant's Companies, the Defendant (i) passed off goods and services as those of another, (ii) represented that goods and services had characteristics, ingredients, uses, benefits, or quantities which they did not have, (iii) represented that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced, and (iv) failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

80. These actions constitute violations of TEX. BUS. & COM. CODE § 17.46(b)(1, 5, 22, 24). Additionally, these acts and omissions constitute unconscionable actions and omissions

that are actionable pursuant to TEX. BUS. & COM. CODE § 17.50(a)(3).

81. As a result of these violations, Plaintiffs sustained millions of dollars in actual damages.

**COUNT TEN**
**CONVERSION**

82. Plaintiff Three Global owned and possessed the company's funds, the work product of its employees, and the assets which were titled to it. Plaintiffs Dickens, Shahan, and Dorrity had a right to immediate possession of a pro rata share of all distributions made by Three Global or all distributable funds held by Three Global.

83. The Defendant wrongfully exercised dominion or control of the personal property described above, unlawfully appropriating the same.

84. As a result, Plaintiffs were deprived of the property, suffering millions of dollars in damages.

**COUNT ELEVEN**
**MONEY HAD AND RECEIVED**

85. The Defendant obtained money which belongs to Plaintiffs in equity and good conscience. The constructive distributions, fraudulent payments, business usurpations, and illegitimate uses of Three Global's assets and funds for the Defendant's personal gain described herein resulted in the Defendant's possession of funds to which Plaintiffs are rightfully entitled, to wit, the proceeds from their joint business venture.

86. Accordingly, Plaintiffs are entitled to recover from the Defendant the funds which belong to Plaintiffs and were wrongfully received by the Defendant.

**COUNT TWELVE**
**UNJUST ENRICHMENT**

87. Unjust enrichment is an equitable doctrine holding that one who receives benefits

unjustly should make restitution for those benefits. A person is unjustly enriched when they obtain a benefit from another by fraud, duress, or the taking of an undue advantage.

88. Here, the Defendant obtained millions of dollars in benefits by conveying funds, usurping corporate opportunities, generating and paying false invoices, and using Three Global's resources for personal gain, under false pretenses and by, while acting in concert, taking undue advantage of the Defendant's status as a fiduciary of Three Global.

89. More specifically, the Defendant acted in concert to funnel monies from Three Global to TDR at a time when Plaintiffs received no distributions from Three Global and Plaintiffs had no ownership interest in TDR.

90. As a result of this conduct, the Defendant has obtained a benefit which would be unconscionable to retain.

**<u>COUNT THIRTEEN</u>**
**NON-DISCHARGEABILITY OF PLAINTIFFS' CLAIM**
**UNDER 11 U.S.C. SECTION 523(a)(2)**

91. Bankruptcy Code § 523(a)(2) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual the Defendant from any debt—
>
> . . .
>
> (2)(A) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the the Defendant's or an insider's financial condition;
>
> (2)(B) use of a statement in writing–
> (i) that is materially false; (ii) respecting the the Defendant's or an insider's financial condition; (iii) on which the creditor to whom the the Defendant is liable for such money, property, services, or credit reasonably relied; and (iv) that the the Defendant caused to be made or published with intent to deceive . . .

92. Counts one through twelve above constitute non-dischargeable claims under Section 523(a)(2).

93. These include, but are not limited to, the Defendant's false and material

misrepresentations as to (i) Three Global's financial status, and (ii) the nature and scope of work performed by the Defendant and the Defendant's Companies by representing that Three Global was operating at a loss and that the Defendant's Companies had provided goods and services to the Defendant, when in fact, Three Global was very profitable and all profits were being skimmed off to pay fraudulent invoices to The Defendant's Companies for goods and services that were not actually provided or performed.

94. The Defendant represented to Plaintiffs that Dickens, Shanan, and Dorrity would equally share in Three Global's distributions, despite the fact that The Defendant planned to make constructive and undisclosed distributions for the Defendant and the Judgment Defendant's exclusive benefit.

95. The Defendant further represented that Three Global was benefiting from company funds, property, and employees, when in reality, such Three Global assets were being utilized for the Defendant's own personal enrichment or enrichment to The Defendant's Companies. The Defendant, together with the Judgment Defendants, represented that Three Global would perform water-related services and provide goods in a synergistic relationship with TDR's roustabout business, when in reality, they intended to use the Defendant's Companies to dismantle Three Global's business. The Defendant and the Defendant's Companies represented that the fraudulent invoices for their goods and services were legitimate.

96. The Defendant intended that Plaintiffs rely upon these material misrepresentations and concealed acts. Plaintiffs did actually rely on the Defendant's representations by, (i) agreeing to contribute capital and sweat equity to Three Global, (ii) forbearing from taking obvious legal action to recover misappropriated funds, property, and corporate opportunities to prevent the ongoing continuation of such conduct, and (iii) making payments to the Defendant's Companies or for the Defendant's benefit.

97. In addition to the Defendant's intention, as owner, manager, and governing agent of TDR, 365 Outdoors, Ten 22 Industrial Oilfield, and/or Total Supply, the Defendant is responsible for the fraud of his Companies and ultimately received the monetary benefit. *See In re Valdineia F. Desouza*, 2024 WL 1739526, *5–6. (Bkrtcy. E.D. Tex. Apr. 23, 2024) ("523(a)(2)(A) can extend to liability for fraud that a Defendant did not personally commit" quoting *Kahkeshani v. Hann (In re Hann)*, No. 22-20407, 2023 U.S. App. LEXIS 27447, at *14 (5th Cir. 2023)).

98. As a result of Plaintiffs' reliance, Plaintiffs sustained millions of dollars in damages for which they now sue, directly and derivatively for actual damages, loss of benefit of the bargain damages as owners of Three Global, exemplary damages, and court costs, as well as a constructive trust on all funds and property wrongfully disgorged from Plaintiffs.

**COUNT FOURTEEN**
**NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM UNDER 11 U.S.C. SECTION 523(A)(4)**

99. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual the Defendant from any debt—

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

100. Counts one through twelve above constitute non-dischargeable claims under Section 523(a)(4) as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code Section 523(a)(4).

101. As manager of Three Global, the Defendant owed Three Global fiduciary duties, which included general duties of loyalty, duty of care, duty of candor, duty of full disclosure, a duty of loyalty and utmost good faith, (see, e.g., *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (Tex. 1942)), a duty to refrain from self- dealing (see, e.g., *Dearing, Inc. v.*

*Spiller*, 824 S.W.2d 728, 733 (Tex. App.—Fort Worth 1992)), a duty not to usurp corporate opportunities for personal gain (see, e.g., *International Bankers Life Ins. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)), a duty to fully disclose personal interests in transactions with the company (see, e.g., *General Dynamics v. Torres*, 915 S.W.2d 45, 49 (Tex. App.—El Paso 1995)), a duty to use uncorrupted business judgment for the sole benefit of the company (see, e.g., *International Bankers*, 368 S.W.2d at 577). More specifically, in addition to the Defendant's position as governing person, manager, managing member and member of Three Global, because the Defendant occupied a special place of confidence and trust as to their running of the finances, banking, and day to day business transactions and check signing of Three Global, the Defendant had a fiduciary relationship and owed fiduciary duties to Plaintiff Three Global and the individual Plaintiffs Dorrity, Shahan and Dickens.

102. By making numerous self-dealing payments without the authorization or knowledge of the other members and managers of the company, utilizing Three Global funds, assets, and resources for personal enrichment, siphoning off Three Global's business and redirecting it to TDR, Industrial Oilfield, Total Supply and/or other the Defendant Companies, the Defendant breached these fiduciary duties to Three Global.

103. The Defendant's conduct breaches of the duties outlined above, proximately caused damages and injury to Three Global in the amounts of millions of dollars in actual damages.

**<u>COUNT FIFTEEN</u>**
**NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM**
**UNDER 11 U.S.C. SECTION 523(A)(6)**

104. Bankruptcy Code §523(a)(6) provides, in relevant part, that:

> (b) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual the Defendant from any debt –
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity …

105. Counts one through twelve above constitute non-dischargeable claims under Section 523(a)(6) due to the Defendant's willful and malicious injury to Plaintiffs and their property.

**COUNT SIXTEEN**
**OBJECTION TO DISCHARGE UNDER 11 U.S.C. SECTION 727(A)(2), (A)(3), (A)(4), AND (A)(5).**

106. During this bankruptcy case, the Defendant has failed to provide banking records and other documents to substantiate the Defendant's inability to pay his debts, including the disposition of the subject funds above, or to substantiate the Defendant's failure to list and disclose interests in various entities, including the entities described in detail above, and entities and property related to the Defendant's interest in The Ping Pug. The Defendant's Schedules and Statement of Financial Affairs are inaccurate, including on account of the Defendant's failure to list his ownership interests in several entities both as of the Petition Date and the preceding 4-year period, and the Defendant's interests in entities and/or property related to The Ping Pug. The Defendant has failed to produce documents and information substantiating his claim that The Ping Pug business is owned by his wife as her separate property.

107. Accordingly, the Defendant and the property of the estate (including community property) should not receive a discharge under Section 727(a)(2), (a)(3), (a)(4), and (a)(5).

**DEFAULT JUDGMENT UNDER FRCP 55**

108. Pursuant to Federal Rule of Civil Procedure 55, as incorporated herein by Federal Rule of Bankruptcy Procedure 7055, the Court should enter a Final Default Judgment against the Defendant on each and every claim in the Complaint.

109. Federal Rule of Civil Procedure 55, as incorporated herein by Federal Rule of Bankruptcy Procedure 7055, govern default judgments. When a defendant fails to timely answer

a complaint, it admits the plaintiff's allegations in the Complaint. *See, e.g., Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. A default judgment is unassailable on the merits").

110. The Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1)(A)–(B) provides that when a plaintiff seeks a default judgment in "any civil action or proceeding … in which the defendant does not make an appearance," the plaintiff must file with the court an affidavit:

> (A) Stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or
>
> (B) If the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. § 3931. This requirement is satisfied by the Declaration of Hudson Jobe.

## IV. CONCLUSION

111. After considering the evidentiary record, the arguments of counsel, the reasons discussed in this Opinion, and the failure by the Defendant to answer, respond, or contest any of the allegations contained in the Complaint, the Court finds that the Defendants is liable for all damages, fees, and costs, and that all relief requested by the Plaintiffs is granted. The Plaintiffs are awarded the following amounts: Jesse Dickens in the amount of $1,714,333.46; Reed Shahan in the amount of $1,714,333.46; and Chuck Dorrity in the amount of $596,289.90. A final judgment will be entered against the Defendant separately.

**The foregoing constitutes the ruling of the Court and has the force and effect therein described.**

**# # # END OF ORDER # # #**

ORDER SUBMITTED BY:

Hudson M. Jobe
Texas Bar No. 24041189
JOBE LAW PLLC
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com