EXHIBIT AA

# REGULATIONS
# OF
# THREE GLOBAL, LLC

## Article 1 - Management

1.1. Management by Members The powers of THREE GLOBAL, LLC, (hereinafter referred to as "Limited Liability Company" or "Company") shall be exercised by and the business affairs shall be managed under the direction of the members. The majority of the members shall designate working titles which shall be assigned to each member. Each member shall fulfill various functions, as described by their title, for the Company; however, these members' titles are not to be construed as officer positions of the Company. The initial designation of members' titles is as follows:

| NAME | OFFICE |
|---|---|
| TINA D. ROLAND | Manager, Finance |
| ROBERT EUGENE (TREY) ROLAND, III | Manager, Operations |
| ROBERT E. ROLAND, JR. | Manager, Production |

1.2. Matters Requiring Unanimity and/or Majority No member shall, without the written consent of both members, do any of the following, except as noted elsewhere herein:

A. Assign or convey Limited Liability Company property, both real and personal, in trust for creditors, or promise to pay any material, written debts, liabilities or obligations for or on behalf of the Company.

B. Confess a judgment.

C. Submit a Company claim or liability to arbitration or reference.

D. Make, execute or deliver for the Company any bond, mortgage, deed of trust, guarantee, indemnity bond, surety bond or accommodation paper or accommodation endorsement.

E. Borrow money in the name of the Company or use Company assets as collateral.

F. Assign, transfer, pledge, compromise or release any claim of or debt owing to the Company except upon payment in full.

G. Agree to pay interest and set other terms of loans to the Company from its member(s) as described in Article 2.1(B).

## Article 2 - Capital, Income, and Drawings

2.1. Initial Capitalization

A. The initial capitalization from each member shall be as follows:

PLS000254

Copy from re:SearchTX

| Member | Initial Capital Contribution |
|---|---|
| ROBERT E. ROLAND, JR. | One-third (1/3rd) of all initial assets and funds owned by the Company. |
| TINA D. ROLAND | One-third (1/3rd) of all initial assets and funds owned by the Company. |
| ROBERT EUGENE (TREY) ROLAND, III | One-third (1/3rd) of all initial assets and funds owned by the Company |

B. Subsequent Capital Contributions The members, in proportion to their distributive shares, shall make such subsequent capital contributions as are needed by the Limited Liability Company. If any member fails to make such contribution, the other members may at their option consider the sums advanced by them to be loans to the Limited Liability Company.

C. Distributive Shares The profits and losses of the Limited Liability Company shall be distributable in the following proportions:

| Members | Distributive Share |
|---|---|
| ROBERT E. ROLAND, JR. | One-third (1/3rd) |
| TINA D. ROLAND | One-third (1/3rd) |
| ROBERT EUGENE (TREY) ROLAND, III | One-third (1/3rd) |

D. Capital and Income Accounts An individual capital, income, and drawing account shall be maintained for each member. The members will by unanimous vote decide the timing of income distributions at their regular members' meeting.

E. Limitations on Withdrawings The Company may not make a distribution to its members to the extent that, immediately after giving effect to the distribution, all liabilities of the Company, other than liabilities to members with respect to their interests and liabilities for which the recourse of creditors is limited to specified property of the Company, exceed the fair value of Company assets, except that the fair value of property that is subject to a liability for which recourse of creditors is limited shall be included in the Company assets only to extent that the fair value of that property exceeds that liability. The members may not reduce the cash account below One Hundred and no/100ths ($100.00).

F. Other Compensation Each Manager may receive a salary agreed upon by a majority of the members. The payment of salaries to the Managers shall be an obligation of the Limited Liability Company only to the extent that assets are available, and shall not be an obligation of the members individually. Salaries to the Managers shall be treated as an expense or liability of the Limited Liability Company in determining profits and losses of the Company and the availability of distributions to members as set forth above. The salary of each Manager shall be determined at each regular members' meeting.



Copy from re:SearchTX

## Article 3 - Financial and Accounting Matters

3.1. Method of Accounting The Limited Liability Company shall keep its books and accounts on a cash basis. The accounts shall readily disclose items which the members take into account separately for income tax purposes. As to matters of accounting not provided for in these Regulations, generally accepted accounting principles shall govern.

3.2 Fiscal Year The fiscal year of the Limited Liability Company shall be the calendar year.

3.3. Indemnification The Limited Liability Company shall promptly indemnify each member, Manager, employee, agent or other person or Company to the extent allowed or required by the Texas Business Organizations Code.

## Article 4 - Record Retention

4.1 The Limited Liability Company shall maintain an up to date list of:

A. The name and mailing address of each member,

B. The percentage or other interest in the Limited Liability Company owned by each member,

C. Copies of the federal, state, and local information or income tax returns for each of the Limited Liability Company's six most recent tax years.

D. A copy of the Certificate of Formation and Regulations, all amendments or restatements, executed copies of any powers of attorney, and copies of any document that it creates, in the manner provided by the Certificate of Formation or Regulations.

E. A written statement of:

(i) The amount of the cash contribution and a description and statement of the agreed value of any other contribution made by each member, and the amount of the cash contribution and a description and statement of the agreed value of any other contribution that the member has agreed to make in the future as an additional contribution; and

(ii) The date on which each member in the Limited Liability Company became a member.

F. Correct and complete books and records of account shall be maintained by the Limited Liability Company.

## Article 5 - Admission of Members and Assignment of Membership Interest

5.1. A person may acquire a membership interest, including an assignee of a membership interest, in the Company upon the written consent of all existing members and capital contribution to the Company of an amount to be set by a unanimous vote of the members.

5.2. A member may assign or pledge his or her interest in the Company only upon receipt of the



Copy from re:SearchTX

unanimous, written consent of all members. Prior to such time as a membership interest may be pledged or assigned, the members will set forth in writing the rights and powers of the assignee.

**Article 6 - Meetings of the Members**

6.1. The members of the Company shall meet at least quarterly, or as needed. Members will be notified at least one (1) week before such members' meeting. The members' meetings may be held in person or via telephone conference call. At least one Manager, which is also a member, must be present to act as a quorum, if the remaining member(s) waive their right to notice and participation of the members' meeting, to transact any normal business of the Company in accordance with the Articles of Organization and Regulations. For transacting other business and within ordinary meetings of the members, each member must be present to establish a quorum.

**Article 7 - Liability to Third Parties**

7.1. The members of the Company are not personally liable for any debts, obligations, or liabilities of the Company, including under a judgment, decree or order of a court.

7.2. In accordance with the Texas Business Organizations Code, the actions of the Company in pursuing business outside the State of Texas shall be granted the protection of full faith and credit under Section 1 of Article IV of the Constitution of the United States.

7.3. A member of the Company is not a proper party to proceedings by and against the Company, except where the object is to enforce a member's rights against or liability to the Company.

**Article 8 - Property**

8.1. Real and personal property owned or purchased by the Company shall be held and owned, and conveyance shall be made, in the name of the Company. Instruments and documents providing for the acquisition, mortgage, or disposition of property of the Company shall be valid and binding upon the Company, if they are executed by at least one (1) member of the Company only after agreement of the members' quorum.

8.2. The members will from time to time make personal property available to the Company for Company use. This property shall remain the property of the members individually and personally, and is not considered part of the Company's assets. No rental shall be paid by the Company to the members for the use of said personal property; however, all usual and customary maintenance expenses and the necessary supplies or equipment to utilize the property on behalf of the Company shall be treated as expense of the Company. Personal property (business assets) of other affiliated entities (affiliated by common ownership or control) may also be made available to the Company for Company use. Any rental agreed upon shall be considered an expense and liability of the Company, as well as all usual and customary maintenance expenses and the necessary supplies or equipment to utilize the property on behalf of the Company shall be treated as expense and liability of the Company.

8.3. A membership interest is personal property. A member has no interest in specific Limited Liability Company property.

**Article 9 - Restriction on Transfer of Membership Interest**

9.1 General Restrictions. A Member may not transfer his Membership Interest, whether now owned or hereafter acquired, or any right or interest in it, without the prior consent of the majority of the Members of the Company, except by a transfer which meets the requirements of this Agreement. Any

PLS000257

Copy from re:SearchTX

purported transfer of Membership Interest in violation of this Agreement shall be void and shall not be effective to transfer any interest in or title to any of the Membership Interest to the purported transferee, and each Member agrees that the Company shall not be obligated to recognize any transfer in violation of this Agreement in the records of the Company nor in any other way.

9.2 Member's Right of First Refusal. No Member of the Company, either directly or indirectly shall sell, give, or otherwise transfer or encumber all or any part of his Membership Interest in the Company to any person, until such Membership Interest shall have first been offered for sale to the other then existing Members of the Company, with the majority ownership Members being given first preference and non-majority members preference after all majority ownership Members have been first offered any available Membership Interest.

9.3 Offer to Sell.

(a) Bona Fide Offer to Purchase. In the event that any Member of the Company shall desire to sell, give or otherwise transfer his Membership Interest, or a portion thereof, or any rights thereto, to any Party he/she shall first obtain a written bona fide offer from such Party for the purchase of such Membership Interest (in the event a transfer for a consideration is contemplated), or in the event a gift is contemplated, written confirmation to the Company that a gift is intended.

(b) Notice of Sale. Not less than sixty (60) days prior to the date of the proposed sale, the Member ("Seller") shall give written notice of the proposed sale (the "Notice of Sale") to the Company. The Notice of Sale shall state that a bona fide offer has been received or, in the event of a proposed gift, that gift is contemplated, and shall contain the following information:

(i) The price offered by the Bona Fide Third Party, the terms and conditions of the proposed sale, or in the event a gift is contemplated, the name of the proposed donee and the relationship of the donee to the Seller.

(ii) The name, physical and mailing address, and phone number of the party to whom the Membership Interest is proposed to be sold or given pursuant to such offer.

(c) Affirmative Offer. The Notice of Sale shall further contain an affirmative offer from Seller (Member) to sell the Membership Interest to the other Members, at the same purchase price and upon the same terms and conditions.

(d) Schedule of Transfer. For a period of sixty (60) days after the notice is delivered, the Members shall have an option to purchase all or any part of the offered Membership Interest upon the same terms and conditions.

9.4 Conditions for Mandatory Transfer.

(a) Necessity of Mandatory Transfer. The parties hereto understand and agree that it is of paramount and significant importance and therefore in the best interest of the Company and for each Member that the maintenance of Membership Interest be and remain in control of certain Company insiders and to ensure that said Company insiders continue to fulfill their functions in Company operations, that restrictions on the transfer of Membership Interests be established before there can be a valid sale



Copy from re:SearchTX

or transfer of any Membership Interest. Upon the occurrence of any of the following events or anticipatory actions as listed below, or as deemed otherwise in the best interests of the Company by the majority of ownership shares but not less than a majority of the ownership shares in the Company, the offending Member shall be required to offer the company or the other then existing members of record, his Membership Interest, in accordance with the terms and conditions set forth in this Agreement, and any purported transfer in violation of this Agreement shall be void and ineffectual and shall not operate to transfer any interest or title or title in the Membership Interest to the purported Transferee.

(b) Events Effectuating Mandatory Transfer. If a Member:

(i) Dies;

(ii) Is adjudged to be mentally incompetent by a Court of competent jurisdiction; or,

(iii) Divorces, and is not awarded, in such Final Decree of Divorce, all of the Divorcing Member's Membership Interest;

then such Member (or his estate) shall be treated as though he had given notice under this Agreement, and the Members shall have the rights as set out in this Agreement to purchase all or any part of his Membership Interest which the Member (or his estate) owns at the time any of the above events occurs, except that in any of the events specified in this Agreement the Membership Interest shall be deemed to be offered for sale to the Members at the purchase price and upon the same terms and conditions specified in Article 9.5.

9.5 Purchase Price. In the event of a mandatory transfer required under the terms of this Agreement, the Purchase Price for the Seller's interest (the "Purchase Price") shall be determined as follows:

(a) The Purchase Price shall be based upon the Fair Market Value of the Company which shall be established by the Members at least annually; based upon the most recent financial statements available to the Members at each such annual meeting, and based upon such other information as the Members deem appropriate. Such agreed value shall be adjusted as needed by calling a Special Meeting of the Members pursuant to these Regulations. The Purchase Price of a Seller's interest upon a mandatory transfer shall be based upon the most recent Fair Market Value as established by the Members; unless, any Member objects to such value; in which event, the Purchase Price shall be determined in accordance with Paragraph 9.5(b) and (c) hereof.

(b) As set forth above, in the event that any Member disagrees with the value of the Seller's interest as established at the most recent Annual and/or Special Meeting of the Members, then the Purchase Price shall be equal to its Fair Market Value , as a going business concern as determined in the sole discretion of the Company's Certified Public Accountant ("CPA"), and such determination by the CPA shall be binding and conclusive upon the parties hereto except in the event of a disagreement with regard to Fair Market Value, in which case the procedures described below shall apply.

(i) In the event there is a disagreement with regard to the Fair Market Value as



Copy from re:SearchTX

determined by the Company's CPA, then the Seller may appoint his own personal CPA to determine the Fair Market Value. In the event the surviving Members disagree with the Seller's CPA's determination of Fair Market Value, then both the Company's CPA and the Seller's CPA shall confer and agree on a third independent CPA whose determination of Fair Market Value of the Company shall be binding and conclusive on all parties.

(c) If the proposed transfer is voluntary and non-mandatory as per the terms of this Agreement, and is to a Bona Fide Third Party purchaser, the purchase price shall be the same price offered by such proposed purchaser, subject to the provisions contained in Article 9.3 above.

(ii) Each party must pay all necessary costs and fees of their CPA. The surviving Members of the Company shall pay all necessary fees of the Company CPA. All necessary fees of the Seller's CPA shall be borne by the seller alone. The necessary fees of the third independent CPA shall be equally split between the surviving Members of the Company and the seller.

(d) Value of Purchase Price for Tax Purposes. It is understood that the purchase price, determined as set forth hereinabove, shall be the value of the purchased shares for tax purposes. In the event such value is later increased by any federal or state taxing authority, any tax liability resulting from such increase shall be borne by the Selling Member or his Personal Representative, as the case may be.

(e) Deduction from Purchase Price for Amounts Owed. The Purchase Price, determined as set forth hereinabove, shall be decreased by any amounts owed by the Selling Member to the Company and by any unpaid cash calls or other unpaid capital contributions due from the Selling Member.

(f) Payment of Purchase Price. In the event of any voluntary and/or mandatory transfer, the Company and each of those Members purchasing such membership interest may individually elect to pay their respective portion of the total purchase price in cash or in installments. If the company or a Member elects to pay in cash, the full amount of the purchase price must be paid in full in cash within sixty (60) days after the date of the receipt of the notice referred to in Article 9.3(b).

If the Company or a Member elects to pay his respective portion of the total purchase price in installments, then and in that event, the following provisions shall apply:

(i) An initial down payment towards the purchase price shall be paid in cash in an amount not less than ten percent (10%) of the purchase price of that portion of the membership interest being purchased on the installment basis by the Company or such electing member. Such down payment shall be paid within sixty (60) days after the exercise of such option under the terms of this agreement.

(ii) The Purchasing Member shall then execute a Promissory Note payable to the Selling Member (or to the Selling Member's estate) in an amount equal to the balance due on the purchase price. Such note shall be payable in monthly installments and shall bear interest at the Prime Rate per annum as published in the Money Rates Column of the *Wall Street Journal* on such date; such



Copy from re:SearchTX

interest rate to be adjusted annually. The monthly installments shall be in an amount necessary to completely amortize and pay the balance due on the note on or before ten (10) years from the date of the note.

9.6 Tax Restrictions on Transfers. Any other provision hereof to the contrary notwithstanding, no Member shall sell, transfer or assign any portion of such Members's Membership Interest without the prior written consent of all of the other Members if such sale, transfer or assignment:

(a) Would, when added to the total of all other sales, transfers or assignments of Membership Interests effected within the preceding twelve (12) months, result in the Company being considered to have terminated for federal income tax purposes within the meaning of Section 708 of the Code; or

(b) Would otherwise cause the Company to lose its status as a partnership for Federal Income Tax purposes.

9.7 Securities Restrictions of Transfer. The Membership Interests have been acquired for investment and have not been registered under the Securities Act of 1933, as amended (the "1933 Act"), or any state securities laws and may not be transferred in violation of the 1933 Act or any applicable state securities law or any rule or regulation promulgated thereunder. Consequently, any other provision hereof to the contrary notwithstanding, no Membership Interest may at any time be sold, pledged or otherwise transferred until and unless either (i) such Membership Interest has been registered under the 1933 Act and all applicable state securities laws; or (ii) the Company has been provided with an opinion of counsel satisfactory to the Company in all respects that such registration is not required for such sale, pledge or other transfer, it is not anticipated that the Company will, and the Company shall at no time be obligated to, register any of the Membership Interests under the 1933 Act or any state securities laws or maintain any information regarding the Company publicly available for the purpose of any provisions of 1933 Act or any state securities laws or any rule or regulation promulgated thereunder.

## Article 10 - Dissolution

10.1 Events of Dissolution The Company shall be dissolved upon the first of the following to occur:

A. When the period fixed for the duration of the Company expires;

B. Written consent of all members;

C. Upon the death, retirement, resignation, expulsion, bankruptcy, or dissolution of a member or the occurrence of any other event which terminates the continued membership of a member in the Company, unless the business of the Company is carried on by the written consent of all remaining members;

D. Entry of a decree of judicial dissolution.

10.2. Certificate of Termination. In the event that the Company voluntarily dissolves prior to the occurrence of any of the above events of dissolution, the Company shall execute Certificate of Termination, to be signed by all members, which shall set forth:

A. The name of the Limited Liability Company;

B. The names and respective addresses of any managers;



Copy from re:SearchTX

C. That all debts, obligations, and liabilities of the Company have been paid or discharged or that adequate provision has been made therefor, or, in case the Company's property and assets were not sufficient to satisfy and discharge all debts, liabilities, and obligations, that all property and assets have been applied so far as they will go to the payment thereof in a just and equitable manner and that no property or assets remain available for distribution among its members.

D. That all remaining property and assets of the Company have been distributed among its members in accordance with their respective rights and interests and that no property remained for distribution to members after applying it as far as it would go to the just and equitable payment of the debts, liabilities, and obligations of the Company.

E. There are no suits pending against the Company in any court, or that adequate provisions have been made for satisfaction of any judgment, order, or decree which may be entered against it in any pending suit.

F. If the Company elected to dissolve by written consent of all members, copy of the written consent to dissolve, and a statement that such written consent has been signed by all members of the Company or signed in their names by their attorneys thereunto duly authorized.

10.3. Winding Up On the dissolution of the Company, the Company's affairs shall be wound up as soon as reasonably practicable. The winding up shall be accomplished by the members. On the winding up of the Company, its assets shall be paid or transferred as follows:

A. To the extent otherwise permitted by law, to creditors, including members who are creditors in satisfaction of liabilities (other than for distribution) of the Company, whether by payment or by establishment of reserves.

B. Unless otherwise provided by the Certificate of Formation or Regulations, to members and former members in satisfaction of the Company's liability for distributions.

## Article 11 - Miscellaneous

11.1. Any notice to a member required or permitted by these Regulations shall be in writing and shall be sufficient if sent by registered or certified mail to the last known address to whom such notice is to be given. Any notice may be waived by the person entitled to receive it.

11.2. The construction of these Regulations utilized captions for convenience only, and shall not be construed in interpreting these Regulations. If any portion of these Regulations shall be held invalid or inoperative, then, so far as is reasonable and possible, the remainder of these Regulations shall be considered valid and operative, and effect shall be given to the intent manifested by the portion held invalid or inoperative.

11.3. These Regulations shall bind the members, their spouses, heirs, representatives and assigns.

11.4. Should any litigation be commenced between any of the members of the Company or their assigns concerning any provisions of these Regulations and the duties of any of the members thereto, the party or parties prevailing in such litigation shall be entitled, in addition to such other relief as may be granted, to a reasonable sum as and for their or his or her attorney's fees in such litigation or in a separate action brought



Copy from re:SearchTX

for that purpose.

11.5. These Regulations shall be governed by the laws of the State of Texas.

**Article 12 - Amendment of Regulations**

12.01. These Regulations may be altered, amended or repealed, and new Regulations may be adopted, by unanimous agreement by the members of the Limited Liability Company, subject to repeal or change by action of the members.

The foregoing set of Regulations was unanimously adopted as the Regulations of THREE GLOBAL, LLC, by the members effective this May 2, 2008.

**ROBERT E. ROLAND, JR.**

**TINA D. ROLAND**

**ROBERT EUGENE (TREY) ROLAND, III**

BOBBIE\CORP\B032a



Copy from re:SearchTX